THIRD DIVISION
March 26, 2008

No. 1-07-0773


THE PEOPLE OF THE STATE OF ILLINOIS,       )       Appeal from
                                                )       the Circuit Court

Plaintiff-Appellee,      )       of Cook County.
                                                )

v.                              )       No. 95 CR 12396
                                                )

KRISHNAKUMAR RAJAGOPAL,      )       Honorable
                                              )       Kevin M. Sheehan,

Defendant-Appellant.      )       Judge Presiding.


JUSTICE THEIS delivered the opinion of the court:

Pursuant to a guilty plea, defendant Krishnakumar Rajagopal was convicted in 1996 of felony theft. In 2004, he filed a petition for postconviction relief, in which he alleged, *inter alia*, that his guilty plea was involuntary and that his trial counsel was ineffective for failing to advise him that he would be deported as a result of his felony conviction. The circuit court dismissed his petition on the merits, finding that the advice given by trial counsel was adequate and defendant's plea was voluntary. For the following reasons, we affirm.

Defendant was charged with one count of felony theft (720 ILCS 5/16-1(a)(2)(A) (West 2004)) and one count of deceptive practices (720 ILCS 5/17-1(B)(d) (West 2004)) arising out of an incident in which he stole the victim's wallet, drafted and deposited a

check drawn on the victim's bank account, and made purchases with a credit card opened in the victim's name. After a Rule 402 conference (177 Ill. 2d R. 402(d)), defendant pled guilty to theft and the State agreed not to prosecute him on the charge of deceptive practices.

At sentencing, defendant was admonished by the court that "we make no promises or representations concerning what immigration may or may not do" with respect to defendant's status as a noncitizen.[1] The court also informed defendant that "I don't know what immigration will do with this case if it comes to their attention." Nevertheless, defendant confirmed that he wanted to proceed with the plea agreement and the court sentenced him to 30 months' probation and 15 days in the Sheriff's Community Work Program and ordered him to pay restitution. Defendant was also advised that he had 30 days to file a motion to withdraw his guilty plea, but he did not do so. Defendant's probation was terminated successfully on August 13, 1996.

In October 2004, eight years after completing his sentence and eight months after learning that the Department of Homeland Security (DHS) might deny his application for permanent residency, defendant filed a petition for postconviction relief pursuant to section 122-1 of the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 (West 2004)). In it, defendant alleged that his trial counsel was ineffective for "affirmatively

---

[1]As of January 1, 2004, courts are required by statute to deliver the following admonishment to all defendants before accepting their guilty pleas: " 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " 725 ILCS 5/113-8 (West 2004).

misadvis[ing defendant] of the immigration consequences" of pleading guilty to felony theft and that his plea was therefore involuntary. Moreover, he alleged that he was "misled by manifestly erroneous information *** received by way of *the Court's admonishments*." (Emphasis in original.) As a result, he became excludable and inadmissible as a permanent resident of the United States and was now subject to deportation. Had he been properly advised of the effect of his felony conviction, defendant claimed, he would have insisted on being tried and he would have prevailed because the police violated the Vienna Convention by not informing the Indian consulate of his arrest and because his inculpatory statements were coerced and would have been suppressed.

Defendant attached two affidavits to his petition. In his affidavit, defendant averred that his trial counsel reiterated the court's allegedly erroneous admonishments about the uncertain effect of his guilty plea on his immigration status, but nonetheless advised him to accept the plea agreement. He was told by counsel that "it was not known what the immigration authorities would or would not do to my immigration status because of my plea." Consequently, defendant believed that "the immigration authorities may not do anything to affect my immigration status *** if I pled guilty to the felony theft charge." At the time defendant was interviewed by DHS in 2003 regarding his pending application for citizenship, immigration officials were unaware of his felony conviction and only learned of it through defendant's disclosure during that interview.

In the second affidavit, defendant's trial counsel acknowledged that he was aware of defendant's citizenship status and desire to become a permanent resident. He stated

3

that he advised defendant that it was uncertain what the immigration authorities would do if they learned of his conviction. He did not advise defendant that if he was convicted of theft, he would be excluded from becoming a permanent resident, but "I now know that this was an incorrect statement of the applicable law and that [defendant] was, *** and still remains, excludable, or inadmissible to the United States as a permanent resident" because of the conviction that resulted from his guilty plea. Counsel also, "in effect, erroneously advised [defendant] that this conviction alone would not in itself determine his immigration status."

In response, the State moved to dismiss the petition, arguing that it was untimely and that, on the merits, trial counsel's representation was not objectively unreasonable. During the hearing, the court *sua sponte* raised the issue of defendant's standing to pursue relief under the Act in light of the fact that he was no longer "incarcerated in the penitentiary" as contemplated by the Act. However, the court ultimately dismissed the petition on the merits, finding that trial counsel's representation was not inadequate. The court did not explicitly rule on the issues of timeliness or standing. Defendant then filed this timely appeal.

On appeal, defendant argues that he made a substantial showing that his trial counsel was ineffective for misstating the law regarding the effect of his plea on his immigration status. In response, the State reasserts the arguments made below concerning the timeliness and the merits of the petition. Moreover, the State now asserts that defendant lacked standing to pursue his remedy under the Act because he was not "incarcerated in the penitentiary" at the time he filed his petition. Defendant claims that

4

1-07-0773

the standing argument is forfeited because the State did not raise this issue in its motion to dismiss the petition. We disagree.

An appellee " 'may urge any point in support of the judgment on appeal, even though not directly ruled on by the trial court, so long as the factual basis for such point was before the trial court.' [Citation.]" Beahringer v. Page, 204 Ill. 2d 363, 370, 789 N.E.2d 1216, 1222 (2003). Moreover, it is well settled that we review the judgment of the trial court, not its reasoning. City of Chicago v. Holland, 206 Ill. 2d 480, 491-92, 795 N.E.2d 240, 247 (2003). Accordingly, we may affirm the judgment below on any basis supported by the record, even if that basis was rejected by the trial court. People v. Davis, No. 2-05-1115, slip op. at 4 (January 17, 2008). Thus, the State's argument was properly raised here.

As to the issue of standing, the Act provides that "[a]ny person imprisoned in the penitentiary may institute a proceeding" thereunder to collaterally attack his conviction. 725 ILCS 5/122-1(a) (West 2004). The Act was intended to provide relief to those defendants whose "liberty is constrained by virtue of a criminal conviction" (People v. Martin-Trigona, 111 Ill. 2d 295, 301, 489 N.E.2d 1356, 1358 (1986)) and where the defendants are " 'subject to being confined' [citation]" by the State (People v. Pack, 224 Ill. 2d 144, 150, 862 N.E.2d 938, 942 (2007)). This interpretation of the Act makes it available not only to those defendants currently incarcerated in a correctional facility or who were released while their timely filed petitions were pending, but also to those released on appeal bond, those on mandatory supervised release, and those sentenced to probation. People v. West, 145 Ill. 2d 517, 519, 584 N.E.2d 124, 125 (1991). In the past,

5

when expanding the concept of "imprisoned" under the Act, the supreme court has relied upon the notion that a defendant's liberty is constrained when he is " 'always on a string, and [the State] may pull the string whenever [it] please[s].' [Citation.]" Martin-Trigona, 111 Ill. 2d at 300, 489 N.E.2d at 1358; accord Pack, 224 Ill. 2d at 150-51, 862 N.E.2d at 942-43.

Although the Act is to be liberally construed to afford defendants an opportunity to assert deprivations of constitutional rights, the Act and its remedies are not available to defendants who have completed their sentences and merely seek to purge their criminal records. Pack, 224 Ill. 2d at 150, 862 N.E.2d at 942, citing Martin-Trigona, 111 Ill. 2d at 299, 489 N.E.2d at 1358. Only those defendants " 'whose liberty is actually restrained are entitled to the protection afforded by the Act.' " Pack, 224 Ill. 2d at 150, 862 N.E.2d at 942, quoting Martin-Trigona, 111 Ill. 2d at 299, 489 N.E.2d at 1358.

A defendant's sentence defines the period during which he is encumbered by his conviction. Martin-Trigona, 111 Ill. 2d at 301, 489 N.E.2d at 1359. Once his sentence is completed, that conviction is no longer an encumbrance and defendant is "no longer in need of the Act's remedial procedures to secure his liberty." Martin-Trigona, 111 Ill. 2d at 301, 489 N.E.2d at 1359. Consequently, the Act is no longer available to him. Martin-Trigona, 111 Ill. 2d at 301, 489 N.E.2d at 1359. For example, in West, the defendant was imprisoned in another jurisdiction at the time he filed his petition challenging a prior conviction that would be used to enhance his sentence. West, 145 Ill. 2d at 519, 584 N.E.2d at 125. However, he was not imprisoned for the crime he sought to challenge under the Act. His challenge was treated as an attempt to expunge his record to avoid an

enhanced sentence and he was prohibited from using the Act to achieve that end. West, 145 Ill. 2d at 519, 584 N.E.2d at 125; but see Pack, 224 Ill. 2d at 150, 862 N.E.2d at 942 (recognizing a limited exception to that rule where a defendant challenges one of his consecutive sentences under the Act while actually serving the other, citing the rationale of Garlotte v. Fordice, 515 U.S. 39, 132 L. Ed. 2d 36, 115 S. Ct. 1948 (1995)).

The precise question before us is whether the specter of deportation constitutes "imprisonment" for purposes of filing a postconviction petition. Our supreme court has not directly addressed that question. The Fourth District Appellate Court, relying on People v. Huante, 143 Ill. 2d 61, 71, 571 N.E.2d 736, 741 (1991), recently held that because deportation is a "collateral consequence" of a defendant's conviction, it is not a constraint on liberty sufficient to bring it within the Act. People v. Mrugalla, 371 Ill. App. 3d 544, 547, 868 N.E.2d 303, 306 (2007). Although Huante recognized deportation as a "collateral consequence" of a conviction, it was in the context of an attorney's duty to provide effective assistance. Huante, 143 Ill. 2d at 71, 571 N.E.2d at 741 (recognizing that an attorney's failure to inform a defendant of the collateral deportation consequences of the guilty plea does not mitigate the voluntariness of that plea and thus does not render the attorney's representation ineffective).

Nevertheless, the court has defined and distinguished the essence of direct and collateral consequences of guilty pleas. People v. Williams, 188 Ill. 2d 365, 372-73, 721 N.E.2d 539, 544 (1999). Collateral consequences are " 'not related to the length or nature of the sentence imposed on the basis of the plea.' [Citation.]" Williams, 188 Ill. 2d at 372, 721 N.E.2d at 544. Moreover, they "generally result[ ] from action taken by

an agency that the trial court does not control. Williams, 188 Ill. 2d at 372, 721 N.E.2d at 544. In particular, " ' "effect on immigration status" ' " is a collateral consequence of a guilty plea. Williams, 188 Ill. 2d at 372, 721 N.E.2d at 544, quoting Cox v. State, 16 Kan. App. 2d 128, 130, 819 P.2d 1241, 1243 (1991), quoting State v. Heitzman, 209 N.J. Super. 617, 622, 508 A.2d 1161, 1164 (1986). On the other hand, direct consequences are "limited to the *penal* consequences of that plea, *i.e.*, the consequences that relate to the sentence imposed on the basis of [that] plea." (Emphasis in original.) Williams, 188 Ill. 2d at 373, 721 N.E.2d at 544.

In light of this distinction, possible deportation cannot constitute "imprisonment" under the Act. Only those defendants whose liberty is actually restrained by their convictions are "imprisoned" for purposes of the Act, and their sentences define that period of restraint. Pack, 224 Ill. 2d at 150, 862 N.E.2d at 942; Martin-Trigona, 111 Ill. 2d at 299, 489 N.E.2d at 1358. But collateral consequences are, by definition, unrelated to the length or nature of the sentence. Williams, 188 Ill. 2d at 372, 721 N.E.2d at 544. Thus, collateral consequences, imposed by agencies not under the control of the court, cannot dictate defendants' sentences or, by extension, the period of imprisonment for purposes of the utilizing the Act. As a collateral consequence, deportation is not an actual restraint on liberty to bring it within the definition of "imprisonment" under the Act.

Additionally, we find cases interpreting federal *habeas corpus* statutes persuasive. 28 U.S.C. §§2254, 2255 (2000); see Pack, 224 Ill. 2d at 150, 862 N.E.2d at 942 (analogizing the Act and federal *habeas* statutes). Similar to the Act, section 2255

permits defendants "in custody," and also those on probation or otherwise presently restrained by their convictions, to collaterally attack the judgments against them. Maleng v. Cook, 490 U.S. 488, 491-92, 104 L. Ed. 2d 540, 544-45, 109 S. Ct. 1923, 1925-26 (1989). However, "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." Maleng, 490 U.S. at 492, 104 L. Ed. 2d at 545, 109 S. Ct. at 1926. Like West, Maleng referred to the possibility of an aggravated sentence as a collateral consequence of a conviction. And, like Huante, the Seventh Circuit has explicitly stated that in the context of ineffective assistance of counsel, "the possibility of deportation is a collateral consequence of a guilty plea." United States v. Montoya, 891 F.2d 1273, 1293 (7th Cir. 1989) (further noting that the decision whether to institute deportation proceedings, or not, lies within the sole discretion of the Attorney General of the United States).

Furthermore, citing the rationale of Maleng, the Fifth Circuit has held that adverse collateral consequences of a conviction, specifically deportation, do not render an individual "in custody" as contemplated by section 2255. United States v. Esogbue, 357 F.3d 532, 534 (5th Cir. 2004); cf. Ogunwomoju v. United States, 512 F.3d 69, 74-75 (2d Cir. 2008) (holding that the defendant was not "in custody" under the companion section 2254 even though he was in DHS custody pending removal proceedings). Thus, potential deportation as a result of a criminal conviction is a collateral consequence of a conviction that has been deemed insufficient to bring a defendant under the parallel federal *habeas corpus* statutory scheme.

Here, defendant's possible deportation, and to a greater extent his being "excludable and ineligible" to become a permanent resident, are collateral consequences of his conviction that do not render him "incarcerated in the penitentiary" as contemplated by the Act. Thus, he has no standing to challenge his conviction by way of a postconviction petition. Defendant successfully completed his probation in August 1996. More than eight years later, after learning that his felony conviction made him ineligible for citizenship and subject to deportation, he attempted to challenge that conviction under the Act. However, he cannot now seek to avoid deportation or any other collateral consequence of his felony conviction by invoking the Act. See Mrugalla, 371 Ill. App. 3d at 547, 868 N.E.2d at 306. The constraints on his liberty owing to his criminal conviction expired with the successful completion of his sentence and he is no longer eligible to seek relief under the Act.

Defendant urges us to view this case in light of People v. Sak, 186 Ill. App. 3d 816, 542 N.E.2d 1155 (1989), in which we held that the defendant, threatened with deportation as a result of his conviction, "was not precluded by the phrase 'imprisoned in a penitentiary' from petitioning" under the Act, notwithstanding the fact that he had completed his probation. However, our subsequent opinion in People v. Farias, 187 Ill. App. 3d 879, 543 N.E.2d 886 (1989), rejected such an expansion of the Act. Rather, Farias explicitly adopted the narrow interpretation prescribed by Martin-Trigona, which "conclusively establishe[d] that a defendant must actually be deprived of his liberty as a result of serving, as opposed to having served, a sentence of *** probation." Farias, 187 Ill. App. 3d at 884, 543 N.E.2d at 889. Curiously, Sak did not address Martin-Trigona,

10

which we find authoritative on this issue. Therefore, we decline to follow the holding in Sak. Despite the directive to liberally construe the Act, its remedies are decidedly not available to defendants who have completed their sentences.

For the foregoing reasons, we affirm the judgment of the circuit court dismissing defendant's postconviction petition. Having found that defendant had no standing under the Act, we need not address the merits of the petition or whether it was timely filed.

Affirmed.

QUINN, P.J., and CUNNINGHAM, J., concur.

# REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

THE PEOPLE OF THE STATE OF ILLINOIS,

      Plaintiff-Appellee,

   v.

KRISHNAKUMAR RAJAGOPAL,

      Defendant-Appellant.

## No. 1-07-0773

**Appellate Court of Illinois**
**First District, Third Division**

**Filed: March 26, 2008**

## JUSTICE THEIS delivered the opinion of the court.

**Quinn, P.J., and Cunningham, J., concur.**

**Appeal from the Circuit Court of Cook County**
**Honorable Kevin M. Sheehan, Judge Presiding**

| | |
|---|---|
| **For DEFENDANT-APPELLANT** | **William R. Quinlan**<br>**Nicholas G. Grapsas**<br>**Quinlan & Carroll, Ltd.**<br>**30 N. LaSalle St.**<br>**Suite 2900**<br>**Chicago, IL 60602** |
| **For PLAINTIFF-APPELLEE** | **Richard A. Devine, State's Attorney**<br>**James E. Fitzgerald, Assistant State's Attorney**<br>**Mary P. Needham, Assistant State's Attorney**<br>**William C. Swallow, Assistant State's Attorney**<br>**300 Richard J. Daley Center**<br>**Chicago, IL 60602** |