Docket No. 109294.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JESUS CARRERA, Appellant.

*Opinion filed November 18, 2010.*

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

Defendant, Jesus Carrera, pled guilty to a drug offense and was sentenced to probation. After defendant had completed his probation on the drug offense, the Immigration and Naturalization Service (INS) instituted deportation proceedings based upon defendant's guilty plea to the drug offense. Accordingly, defendant filed a petition under the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122–1 *et seq.* (West 2006)), seeking to challenge his guilty plea. The circuit court of Du Page County dismissed defendant's petition. The Appellate Court, Second District, affirmed. 394 Ill. App. 3d 368. This court then granted defendant's petition for leave to appeal. 210 Ill. 2d R. 315.

## BACKGROUND

On June 28, 2004, defendant pled guilty to one count of unlawful possession of less than 15 grams of a controlled substance (720 ILCS 570/402(c) (West 2004)). At the plea hearing, the trial court asked, "No immigration problems, nothing like that?" Defendant's trial counsel answered, "No, Judge. It's not an issue." The trial court then sentenced defendant to 24 months' probation. Defendant completed his probation on June 26, 2006.

Sometime after his hearing, defendant, a legal resident of the United States, misplaced his green card. Accordingly, he applied to replace the card. On December 6, 2007, the INS took defendant into custody and instituted deportation proceedings against him.

On January 18, 2008, defendant filed a petition for postconviction relief. In his petition, defendant asserted that it was only when he was detained by the INS on December 6, 2007, that he became aware of the immigration consequences of his June 28, 2004, guilty plea. Defendant noted that he had lived in the United States for 40 of his 46 years, had no prior convictions, had never been incarcerated, and supported a wife and four children ranging in age from 8 to 15. Defendant argued that his guilty plea was not voluntary because it was made in reliance upon his counsel's erroneous advice, reiterated in open court, that no immigration consequences would result from the guilty plea. Defendant acknowledged that his petition was not timely, but argued that he was not culpably negligent because the issue of his attorney's ineffective assistance did not become an issue until defendant was detained by the INS.

The trial court found that defendant's petition presented "a gist of a claim for denial of a constitutional right" and advanced the petition to the second stage under the Act. See 725 ILCS 5/122–2.1(b) (West 2006). At the second stage, the State moved to dismiss the petition on the ground that defendant was not entitled to relief under the Act because he was not a "person imprisoned in the penitentiary," as required under section 122–1(a) in order to bring a claim under the Act. See 725 ILCS 5/122–1(a) (West 2006). In the alternative, the State argued that defendant could not establish that his counsel's performance was deficient, or that he was prejudiced by any alleged deficiency.

At the hearing on the State's motion to dismiss, the trial court stated that the law was "murky," but that it would err on the side of finding that defendant had standing to file his petition, even though his probation had terminated by the time the petition was filed. However, the trial court found that defense counsel was not "objectively deficient," so that defendant had not made a substantial showing of a constitutional violation. The trial court therefore granted the State's motion to dismiss defendant's petition.

The appellate court affirmed the trial court's dismissal of defendant's petition, but on a different ground. 394 Ill. App. 3d 368. The appellate court agreed with the State's argument that defendant did not have standing to bring his claim under the Act because he was not a "person imprisoned in the penitentiary," as required under section 122–1(a). 394 Ill. App. 3d at 370. For that reason, the appellate court affirmed the trial court's order granting the State's motion to dismiss defendant's postconviction petition.

ANALYSIS

At issue in this case is whether defendant has standing to pursue postconviction relief under the Act even though he has served his sentence on the conviction that he seeks to challenge in his postconviction petition. As noted, the appellate court found that defendant lacked standing because he was not "imprisoned in the penitentiary" at the time he filed his petition. Defendant argues that because he faces deportation as a result of his guilty plea, he should not be precluded from seeking postconviction relief. Our review of the dismissal of defendant's postconviction petition is *de novo*. *People v. Pack*, 224 Ill. 2d 144, 147 (2007).

The Act provides that "[a]ny person imprisoned in the penitentiary may institute a proceeding under this Article ***." 725 ILCS 5/122–1(a) (West 2006). In *People v. Dale*, 406 Ill. 238, 246 (1950), *overruled in part on other grounds*, *People v. Warr*, 54 Ill. 2d 487 (1973), this court held that the words "imprisoned in the penitentiary" prevented those who had completed their sentences from using the Act's remedial machinery solely to purge their criminal records. Rather, only those whose liberty was actually restrained were entitled to the protection afforded by the Act. *Dale*, 406 Ill. at 246.

-3-

However, this court has held that the Act does not require actual incarceration as a strict prerequisite to instituting a proceeding under the Act. *People v. West*, 145 Ill. 2d 517, 519 (1991). Rather, courts in this state have always held that a defendant's liberty interests are paramount when construing the Act. *Pack*, 224 Ill. 2d at 150. Consequently, "imprisoned in the penitentiary" has been held to include defendants who have been released from incarceration after timely filing their petition (*People v. Davis*, 39 Ill. 2d 325 (1968)), and defendants who were on mandatory supervised release at the time their postconviction petitions were filed (*People v. Correa*, 108 Ill. 2d 541 (1985)). In addition, a prisoner serving consecutive sentences has been held to be imprisoned under any one of those sentences for purposes of section 122–1(a). *Pack*, 224 Ill. 2d at 152. Likewise, those sentenced to probation or released on parole may file petitions under the Act. *People v. Martin-Trigona*, 111 Ill. 2d 295, 299-30 (1986) (citing *People v. Montes*, 90 Ill. App. 3d 355 (1980), and *People v. Placek*, 43 Ill. App. 3d 818 (1976)). In each of the preceding cases, "imprisoned" for purposes of section 122–1(a) has been held to include petitioners whose liberty, in some way or another, was curtailed to a degree by the state. *Pack*, 224 Ill. 2d at 152.

In *Martin-Trigona*, the court held that a defendant released on an appeal bond was "imprisoned in the penitentiary" for purposes of filing a petition under the Act. *Martin-Trigona*, 111 Ill. 2d at 300. The court explained that:

> "Relief is available under the Act to all persons whose liberty is constrained by virtue of a criminal conviction, and a criminal sentence is relevant only so far as it predicts at what point in time any particular convicted person will be released from the fetters accompanying his conviction so that he is no longer in need of the Act's remedial procedures to secure his liberty." *Martin-Trigona*, 111 Ill. 2d at 301.

Subsequently, in *People v. West*, 145 Ill. 2d 517 (1991), this court held that postconviction relief was unavailable to a petitioner who had fully served his underlying sentence. That sentence was used as an aggravating factor by a sentencing court in Arizona to sentence the petitioner to death. *West*, 145 Ill. 2d at 518. The petitioner sought to attack his Illinois conviction in order to challenge his Arizona sentence. *West*, 145 Ill. 2d at 518. This court held that the petitioner's

incarceration in Arizona was not imprisonment within the meaning of the Act, because the defendant had fully served his Illinois sentence and mandatory supervised release period. *West*, 145 Ill. 2d at 519. The court explained that "[t]he person must be in prison for the offense he is purporting to challenge." *West*, 145 Ill. 2d at 519.

In *Pack*, however, the court held that a defendant sentenced to consecutive sentences of 7 and 60 years could challenge the conviction that resulted in the 7-year sentence, after he had served almost 13 years in the penitentiary. *Pack*, 224 Ill. 2d 144. The court distinguished our decision in *West* on the ground that the petitioner in *West* was not serving consecutive sentences. *Pack*, 224 Ill. 2d at 153. Rather, the defendant in *West* had fully served his sentence and was seeking to challenge his conviction for purposes of purging his record. *Pack*, 224 Ill. 2d at 153. In contrast, the defendant in *Pack* was serving consecutive sentences, which the Department of Corrections treats in the aggregate, so that an invalidation of the defendant's first conviction would advance his release date. *Pack*, 224 Ill. 2d at 152. The *Pack* defendant, therefore, was pursuing a liberty interest. *Pack*, 224 Ill. 2d at 153.

This court has never addressed whether deportation proceedings constitute imprisonment within the meaning of the Act, although our appellate court has addressed the issue and has reached different conclusions. In *People v. Sak*, 186 Ill. App. 3d 816 (1989), the defendant, an illegal alien, pled guilty to theft and was sentenced to 18 months' probation. Sometime after the defendant's probation had terminated, the INS instituted deportation proceedings against the defendant based upon the theft conviction. *Sak*, 186 Ill. App. 3d at 817. The defendant then sought to vacate his guilty plea in the theft case pursuant to the Act, alleging that although he had informed his counsel prior to pleading guilty that he was an illegal alien, his counsel never advised him that his plea could result in deportation. *Sak*, 186 Ill. App. 3d at 817-18.

The Appellate Court, First District, held that the defendant could assert his rights under section 122–1 of the Act, noting that this court had declined to read "imprisoned in the penitentiary" as a jurisdictional limit on circuit courts to entertain petitions. *Sak*, 186 Ill. App. 3d at 818. The court concluded:

"That some clearly defined method must exist by which

Sak could raise issue with the denial of his Federal constitutional rights is fundamental. That he could be deprived of that opportunity by completing his sentence and, thereby, unwittingly forfeit those rights is unreasonable." *Sak*, 186 Ill. App. 3d at 819-20.

The court therefore held that the defendant was not precluded from filing his petition for postconviction relief under section 122–1 of the Act, even though he had completed his probation prior to filing his petition. *Sak*, 186 Ill. App. 3d at 820.

Nonetheless, one month later, despite the decision in *Sak*, the Appellate Court, First District, held that a defendant, who had served her probation following a guilty plea to a felony drug charge, could not bring a petition for postconviction relief under section 122–1. *People v. Farias*, 187 Ill. App. 3d 879 (1989). The *Farias* defendant's petition alleged that defense counsel had failed to inform the defendant that, as a result of her guilty plea, she could be denied both permanent resident alien status and United States citizenship status. *Farias*, 187 Ill. App. 3d at 880. The *Farias* court held that this court's decision in *Martin-Trigona* conclusively established:

> "that a defendant must actually be deprived of his liberty as a result of serving, as opposed to having served, a sentence of imprisonment, parole, mandatory supervised release, or probation or as a result of being on appeal bond awaiting resentencing at the time he files his petition for post-conviction relief." *Farias*, 187 Ill. App. 3d at 884.

The court noted that the Act was intended to remedy deprivations of liberty resulting from violations of a petitioner's constitutional rights, so that absent such a deprivation, the wrong which the Act was intended to remedy was nonexistent. *Farias*, 187 Ill. App. 3d at 884.

In a later decision, the Appellate Court, First District, observed that *Farias* rejected the expansion of the Act set forth in *Sak*, and instead adopted the narrow interpretation set forth in *Martin-Trigona*. *People v. Rajagopal*, 381 Ill. App. 3d 326, 332 (2008). *Rajagopal* pointed out that, in fact, the *Sak* court did not even address *Martin-Trigona*. *Rajagopal*, 381 Ill. App. 3d at 332-33.

In *Rajagopal*, the petitioner filed a petition for postconviction relief eight years after completing the sentence imposed on his guilty

plea for theft. *Rajagopal*, 381 Ill. App. 3d at 327. The petitioner alleged that his trial counsel was ineffective for affirmatively misadvising him of the immigration consequences of his guilty plea to felony theft, so that he was now subject to deportation. *Rajagopal*, 381 Ill. App. 3d at 327-28. The court held that the specter of deportation did not constitute imprisonment under the Act. *Rajagopal*, 381 Ill. App. 3d at 331.

In so holding, the *Rajagopal* court noted the distinction between collateral consequences and direct consequences of guilty pleas, observing that collateral consequences are not related to the length or nature of a sentence, while direct consequences related to the sentence imposed on the basis of that plea. *Rajagopal*, 381 Ill. App. 3d at 331. *Rajagopal* further noted that this court had held that the effect on immigration status is a collateral consequence of a guilty plea. *Rajagopal*, 381 Ill. App. 3d at 331, citing *People v. Williams*, 188 Ill. 2d 365, 372 (1999). The court therefore held that possible deportation could not constitute imprisonment under the Act, as "collateral consequences, imposed by agencies not under the control of the court, cannot dictate defendants' sentences or, by extension, the period of imprisonment for purposes of utilizing the Act." *Rajagopal*, 381 Ill. App. 3d at 331.

The Appellate Court, Fourth District, also declined to follow the decision in *Sak*. See *People v. Mrugalla*, 371 Ill. App. 3d 544 (2007). The defendant in *Mrugalla* was sentenced to probation following a guilty plea to a drug offense. *Mrugalla*, 371 Ill. App. 3d at 545. After the defendant had served his probation, he was detained by the Department of Homeland Security and eventually was ordered to be deported. *Mrugalla*, 371 Ill. App. 3d at 545. The defendant filed a petition for postconviction relief seeking to vacate his conviction for the drug offense, five years after his discharge from probation. *Mrugalla*, 371 Ill. App. 3d at 545. In the appellate court, the defendant urged the court to follow *Sak* and argued that the Act could be interpreted to cover those who had completed their sentence but still faced the threat of a serious deprivation of liberty, such as detention and deportation, as a direct result of a prior conviction. *Mrugalla*, 371 Ill. App. 3d at 545-46.

The appellate court rejected the defendant's argument, holding that the defendant's liberty was not currently being restrained by his

Illinois conviction–the conviction he was purporting to challenge. *Mrugalla*, 371 Ill. App. 3d at 547. The court stated that:

> "Instead, defendant's detention and deportation are the result of an adverse ruling in a federal deportation proceeding. Defendant's liberty is being curtailed by the federal government, not by the State of Illinois. Even if the federal government instituted the deportation proceedings based solely on defendant's Illinois conviction, as defendant alleges, this does not transform the alleged deprivation of liberty effected by the federal government into a deprivation effected by the State of Illinois." *Mrugalla*, 371 Ill. App. 3d at 547.

Likewise, the Appellate Court, Fifth District, also has rejected the claim that deportation is a severe deprivation of liberty such that the trial court had jurisdiction to entertain the defendant's postconviction petition, which was filed after the defendant was discharged from probation. *People v. Tostado*, 362 Ill. App. 3d 949 (2005).

The appellate court in the instant case agreed with the weight of authority that the defendant in this case did not have standing to bring his claim under the Act. 394 Ill. App. 3d at 373. The appellate court therefore affirmed the trial court's dismissal of defendant's petition on that basis. 394 Ill. App. 3d at 373.

In this court, defendant again argues that this court should adopt the reasoning of the appellate court in *Sak*. Defendant argues that to deny his postconviction petition merely based on standing would be a serious deprivation of his constitutional rights. Defendant would be deported and would have no legal remedy to withdraw his guilty plea.

Defendant distinguishes *Farias* on the ground that defense counsel in that case failed to give any advice, while defendant's attorney in this case gave erroneous advice. Similarly, in *Rajagopal*, the trial court informed the defendant that it made no promises or representations concerning what immigration might do, and explained that it did not know what immigration would do with the defendant's case. The *Tostado* defendant also was on notice of possible immigration consequences. Although *Mrugalla* contains no statement on or off the record as to the effectiveness of his counsel, there are no allegations that the defendant in that case was misled regarding the consequences of his guilty plea. Defendant argues that because his situation is

distinguishable from the preceding defendants, who were on notice as to possible deportation consequences, he should be allowed to proceed with his postconviction petition.

The State disagrees with defendant's attempts to distinguish *Farias*, *Rajagopal* and *Tostado*. The State observes that whatever the merits of the defendants' underlying constitutional claims in those cases, those decisions squarely hold that one who has completely served his sentence may not seek postconviction relief for that conviction. The State also notes that federal courts interpreting the "in custody" requirement of the federal *habeas corpus* statutes have also held that one held in immigration detention is not "in custody" for purposes of challenging a state conviction under the statute. See *Ogunwomoju v. United States*, 512 F.3d 69, 74-75 (2d Cir. 2008) (citing cases). The State points out that it is not aware of any court that has followed *Sak*, and also notes that *Sak* failed to address this court's decision in *Martin-Trigona*. With regard to defendant's claim that if this court does not adopt the reasoning of *Sak*, he will have no remedy or no means to withdraw his plea, the State responds that defendant is situated no differently than any other defendant who learns of an alleged constitutional infirmity in his proceedings after discharging his sentence.

Upon review, we decline to adopt the analysis of the court in *Sak*. As the court in *Rajagopal* recognized, the *Sak* decision is contrary to this court's well-established precedent.

The instant case is analogous to this court's decision in *West*, where the defendant had fully served his Illinois sentence, but nonetheless sought to attack his Illinois conviction in order to challenge his death sentence in Arizona. As this court held in *West*, the defendant's incarceration in Arizona was not imprisonment within the meaning of the Act because the defendant had already served his Illinois sentence.

Here too, defendant has fully served his Illinois sentence, but seeks to attack his Illinois conviction in order to challenge his deportation proceedings. Defendant's detention by the INS is not imprisonment within the meaning of the Act, however, because defendant has already served his Illinois sentence. Given the fact that defendant had fully served his underlying sentence prior to filing his postconviction petition, defendant's liberty was not curtailed by the state in any way,

and he was not a person "imprisoned in the penitentiary," as required in order to file a claim for postconviction relief. Consequently, defendant had no standing under the Act to file his petition for postconviction relief.

Our analysis, however, does not end there. In his reply brief, defendant notes that the United States Supreme Court recently filed its decision in *Padilla v. Kentucky*, 559 U.S. ___, 176 L. Ed. 2d 284, 130 S. Ct. 1473 (2010). In that case, the defendant, a legal permanent resident of the United States for 40 years, pled guilty to drug distribution charges. As a result, the defendant faced deportation proceedings. The defendant filed a postconviction petition alleging that his trial counsel told him not to worry about deportation because the defendant had lived in this country for so long. *Padilla*, 559 U.S. at __, 176 L. Ed. 2d at 290, 130 S. Ct. at 1478. The Kentucky Supreme Court denied the defendant postconviction relief on the ground that the sixth amendment's guarantee of the effective assistance of counsel did not protect defendants from erroneous deportation advice, because deportation is merely a collateral consequence of a conviction. *Padilla*, 559 U.S. at __, 176 L. Ed. 2d at 290, 130 S. Ct. at 1478.

The Supreme Court reversed, holding that the defendant's counsel had an obligation to advise him that the offense to which he was pleading guilty would result in the defendant's removal from this country and would subject him to automatic deportation. *Padilla*, 559 U.S. at ___, 176 L. Ed. 2d at 299, 130 S. Ct. at 1486-87. The Court noted that before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel. *Padilla*, 559 U.S. at ___, 176 L. Ed. 2d at 293, 130 S. Ct. at 1480-81. The Court further observed that the Kentucky Supreme Court was not alone in its view that the failure of defense counsel to advise the defendant of possible deportation consequences was not cognizable as a claim for ineffective assistance of counsel, because collateral consequences are outside the scope of representation required by the sixth amendment. *Padilla*, 559 U.S. at ___ & n.9, 176 L. Ed. 2d at 293 & n.9, 130 S. Ct. at 1481 & n.9. However, the Court explained that it had never applied a distinction between direct and collateral consequences to define the scope of constitutionally required reasonable assistance under *Strickland*. *Padilla*, 559 U.S. at ___, 176 L. Ed. 2d at 293, 130

S. Ct. at 1481. Further, given the unique nature of deportation, the distinction between direct and collateral consequences need not be considered. *Padilla*, 559 U.S. at ___, 176 L. Ed. 2d at 293, 130 S. Ct. at 1481.

With regard to deportation, the Court stated that it had long recognized that deportation was a particularly severe penalty, but was not, in a strict sense, a criminal sanction. *Padilla*, 559 U.S. at ___, 176 L. Ed. 2d at 293, 130 S. Ct. at 1481. Nonetheless, removal proceedings are intimately related to the criminal process, though they are civil in nature. *Padilla*, 559 U.S. at ___, 176 L. Ed. 2d at 293, 130 S. Ct. at 1481. For that reason, the Court found it "most difficult" to divorce the penalty from the conviction in the deportation context. *Padilla*, 559 U.S. at ___, 176 L. Ed. 2d at 294, 130 S. Ct. at 1481.

The Supreme Court found that:

> "Deportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence. The collateral versus direct distinction is thus ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation. We conclude that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel. *Strickland* applies to Padilla's claim." *Padilla*, 559 U.S. at ___, 176 L. Ed. 2d at 294, 130 S. Ct. at 1482.

The Supreme Court therefore held that counsel must inform her client whether his guilty plea carries a risk of deportation. *Padilla*, 559 U.S. at ___, 176 L. Ed. 2d at 299, 130 S. Ct. at 1486. When the law is unclear, the defense attorney need only advise the noncitizen client that the pending criminal charge may carry a risk of adverse immigration consequences. *Padilla*, 559 U.S. at ___, 176 L. Ed. 2d at 296, 130 S. Ct. at 1483. However, when the deportation consequence is clear, the duty to give correct advice is equally clear. *Padilla*, 559 U.S. at ___, 176 L. Ed. 2d at 296, 130 S. Ct. at 1483.

Defendant argues that based upon *Padilla*, he has standing in this case to proceed with his postconviction petition. Defendant notes that *Padilla* rejected the characterization of deportation as a collateral consequence of a guilty plea. Accordingly, defendant argues that

deportation does constitute imprisonment under the Act.

We do not agree with defendant that *Padilla* confers standing for him to proceed with his postconviction petition. That counsel is required to inform a defendant of the deportation consequences of his guilty plea under *Strickland* does not render that defendant in custody for purposes of our Act, if the defendant has already served the sentence on the conviction that he seeks to challenge.

*Padilla* declined to classify deportation as either a direct or a collateral consequence. As this court has explained, collateral consequences are " 'not related to the length or nature of the sentence imposed on the basis of the plea,' " while direct consequences are "limited to the *penal* consequences of that plea, *i.e.*, the consequences that relate to the sentence imposed on the basis of [that] plea." (Emphasis in original.) *People v. Williams*, 188 Ill. 2d 365, 372, 373 (1999), quoting *State v. McFadden*, 884 P.2d 1303, 1304 (Utah App. 1994). Even in light of *Padilla*, we cannot say that deportation is a consequence that relates to the sentences imposed on the basis of that plea.

In so holding, we find the analysis of the Ninth Circuit Court of Appeals in *Resendiz v. Kovensky*, 416 F.3d 952 (9th Cir. 2005), to be well taken. In that case, the court rejected the defendant's claim that the immigration consequences of his state conviction rendered him "in custody pursuant to the judgment of a State court" for purposes of the federal *habeas corpus* statute, even though the sentence for that state conviction had expired. The court held:

> "[S]evere consequences notwithstanding, two independent agencies (indeed, sovereigns) are operating here. The state's action is entirely independent of the INS's action initiating deportation proceedings, and the state has nothing to do with deportation. Thus, while Resendiz is indeed threatened with banishment, it is not a threat imposed by the state court, and there is nothing unlawful about the INS detention." *Resendiz*, 416 F.3d at 958.

Indeed, the *Resendiz* court recognized that a state trial judge has no control whatsoever over the action of the INS. *Resendiz*, 416 F.3d at 957.

Like *Resendiz*, our appellate court in *Mrugalla* also reasoned that

the defendant's detention and deportation were the result of a federal deportation proceeding, and that the defendant's liberty was being curtailed by the federal government, not by the State of Illinois. *Mrugalla*, 371 Ill. App. 3d at 547. The fact that the deportation proceedings may have been instituted solely based upon the defendant's state conviction could not transform the deprivation of liberty effected by the federal government into a deprivation of liberty by the State of Illinois. *Mrugalla*, 371 Ill. App. 3d at 547.

We find the reasoning of the *Resendiz* and *Mrugalla* courts to be valid even following the Supreme Court's decision in *Padilla*. Because the state has nothing to do with defendant's deportation, and has no control over the actions of the INS, we cannot say that defendant's possible deportation renders defendant a person "imprisoned in the penitentiary" as required in order to proceed with his postconviction petition under the Act. Defendant's custody in the INS is not pursuant to a judgment of a state court. The current constraints on defendant's liberty are imposed by the INS. The constraints of defendant's liberty due to his criminal conviction expired with defendant's successful completion of his probation, so that defendant is no longer eligible to seek relief under the Act. Here, defendant essentially is seeking to challenge his conviction for purposes of purging his record. As we held in *Dale*, a postconviction remedy is available only to those that are actually being deprived of their liberty, and not to those who have served their sentences and might wish to purge their records of past convictions. *Dale*, 406 Ill. at 246.

Moreover, we note that in *Maleng v. Cook*, 490 U.S. 488, 104 L. Ed. 2d 540, 109 S. Ct. 1923 (1989), the Supreme Court addressed whether a defendant was "in custody" under the federal *habeas corpus* statute on a sentence that had expired, because the expired sentence had been used to enhance current or future sentences imposed for subsequent convictions. The Court acknowledged that its interpretation of the "in custody" language had not required that a prisoner be physically confined in order to challenge his sentence on *habeas corpus*. *Maleng*, 490 U.S. at 491, 104 L. Ed. 2d at 545, 109 S. Ct. at 1925. The Court stated, however, that it never held "that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his

-13-

petition is filed." (Emphasis in original.) *Maleng*, 490 U.S. at 491, 104 L. Ed. 2d at 545, 109 S. Ct. at 1925.

Consequently, given the fact that defendant had fully served his sentence in the conviction that he now seeks to challenge, we find that defendant was not "imprisoned in the penitentiary" as required in order to institute a proceeding for postconviction relief under section 122–1 of the Act. That the United States Supreme Court in *Padilla* declined to classify deportation as either collateral or direct for purposes of the sixth amendment does not change that result. Accordingly, the appellate court properly affirmed the dismissal of defendant's postconviction petition.

Finally, we reject defendant's claim that he is entitled to postconviction relief even if he is not imprisoned for purposes of the Act because otherwise he has no legal remedy to withdraw his petition. Defendant points out that in *People v. Warr*, 54 Ill. 2d 487, 493 (1973), this court exercised its supervisory authority to hold that "a defendant convicted of a misdemeanor who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his constitutional rights may institute a proceeding in the nature of a proceeding under the Post-Conviction Hearing Act." Defendant argues that he also should be afforded his day in court.

We find *Warr* distinguishable from the instant case. In *Warr*, this court noted there was no remedy for those convicted of a misdemeanor who asserted that their constitutional rights were violated in the proceeding which resulted in their conviction. *Warr*, 54 Ill. 2d at 491. The court found that the Post-Conviction Hearing Act provided a basic model for a remedy, but that the remedy must be modified in the case of misdemeanors. *Warr*, 54 Ill. 2d at 493. The court therefore provided that a defendant convicted of a misdemeanor who asserts that in the proceedings that resulted in his conviction there was a substantial denial of his constitutional rights could institute a proceeding in the nature of a proceeding under the Act, with certain limitations. *Warr*, 54 Ill. 2d at 493.

Here, in contrast, defendant has a remedy to challenge his conviction, so long as the challenge is made while defendant is serving the sentence imposed on that conviction. While sympathetic to defendant's plight, this court cannot expand the remedy set forth in the Act in order to bring defendant's case within the reach of the Act.

Section 122–1(a) provides that "[a]ny person imprisoned in the penitentiary may institute a proceeding under this Article ***." As discussed, because defendant was not imprisoned in the penitentiary at the time he filed his postconviction petition, as required by section 122–1(a), he could not invoke postconviction relief. Consequently, the circuit court could not consider defendant's claim, and the appellate court properly affirmed the dismissal of defendant's postconviction petition on the basis that defendant lacked standing to bring his claim.

In light of our holding in this case, we need not address the additional arguments raised by the State in its brief.

## CONCLUSION

For all of the foregoing reasons, we affirm the decision of the appellate court.

*Appellate court judgment affirmed.*