2020 IL App (1st) 170944-U

No. 1-17-0944

Order filed June 23, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 2105 |
| | ) | |
| JIGAR MEHTA, | ) | Honorable |
| | ) | Richard D. Schwind, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's convictions for unlawful use of a weapon by a felon where the record is insufficient for this court to address his claim that trial counsel was ineffective for failing to file a motion to suppress evidence.

¶ 2    Following a bench trial, defendant Jigar Mehta was found guilty of two counts of unlawful use of a weapon by a felon (UUWF) and sentenced to concurrent terms of three years' imprisonment. On appeal, defendant contends that he was denied his right to the effective assistance of trial counsel based on counsel's failure to file a motion to suppress the gun

recovered from defendant's search and seizure on January 2, 2016. For the following reasons, we affirm.

¶ 3    Defendant was charged by indictment with two counts of UUWF (720 ILCS 5/24-1.1(a) (West 2016)), stemming from his possession of a handgun (count 1) and firearm ammunition (count 2) inside his brother's home on January 2, 2016.

¶ 4    Prior to trial, defendant filed a motion to suppress statements he made to police at the time of his arrest on January 12, 2016. At the hearing, Hoffman Estates officer Timothy Stoy testified that on January 12, 2016, he received information of a criminal offense that occurred on January 2, 2016, involving defendant. Stoy met defendant on January 12, and prior to asking defendant any questions, defendant made statements about the January 2 incident. The court denied the motion, finding that defendant made spontaneous, unsolicited statements that were not suppressible under *Miranda*. In denying the motion, the court noted that any statements made in response to interrogation would not be admissible.

¶ 5    At trial, Jaykishan Mehta, defendant's brother, testified that he lived in Hoffman Estates with defendant, his mother and Abinash Mehta.[1] On January 2, 2016, about 4:20 p.m., Jaykishan contacted the police to remove a gun from his condominium. He did not know the whereabouts of the gun but believed that his brother had it. Jaykishan did not see defendant or his father, Abinash Mehta, in possession of the gun that day. Jaykishan spoke with the officers and allowed them into the condo. He then went to get Abinash. When Jaykishan returned, he saw an officer holding the gun he "called the police about in the first place." When the officer asked for the

---

[1] The mother's name is not in the record. Because multiple witnesses share the same last name, we refer to these witnesses by their first name.

location of more bullets Jaykishan directed the officers to his parents' bedroom. Jaykishan did so, after Abinash told him where the bullets were located.

¶ 6     On cross-examination, Jaykishan stated he saw the gun in the condo on January 2, and prior to that was not aware of it. He knew the gun belonged to Abinash because, on January 2, Abinash told him that the gun belonged to him. Jaykishan owned the residence, a condo on the sixth floor where he and his parents stayed in separate bedrooms, and defendant had stayed on a couch in the living room for approximately a month. Jaykishan met the officers in the main area of the building, rode the elevator up with them and allowed them into his condo.

¶ 7     Hoffman Estates police officer Theoharis testified that on January 2, 2016, at 4:24 p.m. he and Officers Lawrence and Blass responded to a call of a domestic disturbance. [2] The officers met with Jaykishan in the common area of Jaykishan's apartment building. Theoharis had a conversation with Jaykishan, who then let them into the residence. After walking past the kitchen, Theoharis saw defendant sitting on a couch. Theoharis and Lawrence patted defendant "down for [their] safety" and recovered a loaded six-shooter Ruger special from defendant's left front sweatpants pocket. Jaykishan led Theoharis to a back bedroom where he located 18 ".38 special ammunition." Theoharis did not run defendant's criminal history and did not place defendant under arrest that day as he did not believe defendant had committed a crime.

¶ 8     On cross-examination, Theoharis stated he did not investigate to learn if any of the residents of the condo had a Firearm Owners Identification (FOID) card. He did not recall exactly Abinash's whereabouts in the condo. Theoharis acknowledged that Lawrence recovered the gun from defendant. Theoharis believed defendant lived in the residence and did not run a

---

[2] The record does not contain the officers' first names.

background check on defendant. Theoharis confiscated the gun because Abinash wanted it "to be in safekeeping" with the police.

¶ 9    Stoy testified that on January 12, 2016, he followed up on a call involving a firearm that occurred on January 2, 2016. He learned that defendant, who was the subject of the January 2 incident, was a convicted felon. Stoy along with Hoffman Estates police officer Fesemyer and Sergeant Scaccianoce went to the condo and met defendant at the door.[3] Defendant allowed them into the apartment and stated, "he was never arrested for possessing his dad's gun. He also said that we needed - - he repeatedly said we needed a warrant to enter the apartment to arrest him. He also said it was okay to possess the gun because he was inside his own residence." Defendant was arrested and transported to the police station.

¶ 10    A certified copy of defendant's conviction for felony offense of identity theft in case number 11 CR 15117 was admitted into evidence without objection, and the State rested. Defendant moved for a directed verdict, arguing the evidence was insufficient to find him guilty. The court denied the motion.

¶ 11    Abinash testified, through a Gujarati interpreter, that he resided in a condo in Hoffman Estates with his wife, defendant and Jaykishan. On January 2, 2016, police came to his residence and Jaykishan told Abinash to give him the gun. Abinash retrieved an unloaded gun from the drawer, gave it to Jaykishan, and went to the living room. Abinash also stated that he gave the gun to police. He testified that the officers removed defendant's wallet and a bullet from defendant's pocket. Abinash purchased the gun in October 2015 and had an Illinois FOID card. After handing the gun to police, he informed them, using Jaykishan as a translator, that he had a

---

[3] The record does not contain Fesemyer's or Scaccianoce's first names

FOID card. He also told Jaykishan about the extra bullets located in a drawer. The bullets were also tendered to police. Abinash explained that defendant had stayed at the residence for approximately a week. Defendant never had the gun in his possession.

¶ 12     In response to questions by the court, Abinash stated that, when the police arrived, his wife was in the living room and Jaykishan knocked on the bedroom door to alert Abinash. Abinash gave the officers an unloaded gun. On cross-examination, Abinash clarified that the gun was unloaded when he took it out of the drawer. He saw the officers remove defendant's wallet.

¶ 13     The court found defendant guilty of UUWF for possession of a firearm (count 1) and guilty of UUWF for possession of firearm ammunition (count 2). In doing so, the court noted that it found Jaykishan's testimony "very credible" and found Abinash's "testimony to be incredible." The court pointed out that the officers testified they searched defendant for their own safety because Jaykishan believed him to be in possession of a gun. Defendant filed an amended motion for new trial, which was denied.

¶ 14     The trial court sentenced defendant to concurrent terms of three years' imprisonment. Defendant did not file a motion to reconsider sentence.

¶ 15     On appeal, defendant contends that his trial counsel was ineffective for failing to file a motion to suppress evidence of the loaded gun. He argues that such a motion would have been meritorious because the gun was seized following an unlawful *Terry* stop (*Terry v. Ohio*, 392 U.S. 1 (1968)) during which the officers had no reason to believe that he had committed a crime or was armed and dangerous. Defendant maintains that this court should reverse his conviction outright because, without the evidence of the gun that should have been suppressed, the State's case was insufficient to support a finding of guilt.

¶ 16 The State initially responds that because a motion to suppress was never filed the record is insufficient for defendant to meet his burden of showing that his trial counsel was ineffective. Specifically, the State maintains that the record is missing critical information to determine whether defendant's search and seizure was unconstitutional. We agree with the State.

¶ 17 A claim of ineffective assistance of counsel must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient and (2) he was prejudiced by counsel's performance. *Id.* at 687, 693. Specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that a reasonable probability exists that, but for counsel's deficiency, the result of the proceeding would have been different. *People v. Henderson*, 2013 IL 114040, ¶ 11. The failure to satisfy either prong of the Strickland test precludes a finding of ineffective assistance of counsel. *People v. Patterson*, 192 Ill. 2d 93, 107 (2000). Trial counsel's decision on "whether to file a motion to suppress is generally considered 'a matter of trial strategy, which is entitled to great deference.' " *People v. Bew*, 228 Ill. 2d 122, 128 (2008) (quoting *People v. White*, 221 Ill. 2d 1, 21 (2006)). Specifically in determining whether there was prejudice based on the failure to file a motion to suppress "the defendant must demonstrate that the unargued suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *Henderson*, 2013 IL 114040, ¶ 15. A reviewing court will not find counsel's performance deficient where the motion would have been futile. *People v. Patterson*, 217 Ill. 2d 407, 438 (2005).

¶ 18    That said, a reviewing court should not simply proceed to the merits of every ineffective assistance of counsel claim. When a claim of ineffectiveness is based on counsel's failure to file a motion to suppress evidence, the record may be inadequate for a reviewing court to make a conclusion on the issue and the better resolution may be for defendant to raise the issue in a collateral challenge under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)). See *Bew*, 228 Ill. 2d at 134. This is the case here. *Id.*; see also *People v. Veach*, 2017 IL 120649, ¶ 46.

¶ 19    In reaching this conclusion, we are mindful that in *Veach*, our supreme court cautioned against categorically determining that all ineffective assistance claims are better suited to collateral review. *Veach*, 2017 IL 120649, ¶ 46. Rather, in *Veach* our supreme court instructed this court to "carefully consider each ineffective assistance of counsel claim on a case-by-case basis" to determine if the circumstances permit us to adequately address a defendant's ineffective assistance of counsel claim on direct review before deferring consideration of the claim to collateral review. *Id.* ¶ 48.

¶ 20    Here, after a careful review of the record on appeal, we decline to consider defendant's claim of ineffectiveness because the record is devoid of evidence that would allow this court to determine whether a motion to suppress evidence of the gun would have been granted or whether police acted lawfully under the circumstances. The record shows that officers responded to a domestic disturbance call on January 2, 2016. Upon arriving at the address, the officers had a conversation with Jaykishan, who allowed them inside the condo, where they saw defendant. Theoharis and Lawrence patted defendant "down for [their] safety" and recovered a gun from defendant.

¶ 21    Officers followed up to gather more information and on January 12, with information that defendant was a convicted felon, they went back to the condo and arrested him for UUWF.

¶ 22    As mentioned, in order to establish ineffective assistance based on counsel's failure to file a suppression motion, defendant must demonstrate both that the unargued suppression motion was meritorious and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed. *Henderson*, 2013 IL 114040, ¶ 5. It is defendant's burden to establish a factual basis for a motion to suppress which will be granted if he can show evidence was obtained by an illegal search or seizure. *People v. DeLuna*, 334 Ill. App. 3d 1, 10 (2002). A police officer may conduct a short, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to, commit a crime. *Terry*, 392 U.S. at 21-22, 27. To justify a search, officers "need not be absolutely certain that the individual is armed" but reasonably believe they are dealing with someone "armed and dangerous." *Id.* at 27. The reasonableness of a protective search will be determined by the facts of the individual case. *Id.* at 30.

¶ 23    In this case, there is not sufficient evidence in the record about the seizure and search of defendant from which we can determine whether a motion to suppress would have been meritorious. *People v. Burnett*, 2019 IL App (1st) 163018, ¶ 16 (finding the record was insufficient where the defendant failed to file a motion to quash arrest and suppress evidence). The lack of evidence regarding this issue is not surprising since a motion to suppress evidence was never filed, leaving the State responsible for proving only that defendant committed UUWF. The State had no reason to demonstrate much less prove that the officers had a factual basis for reasonable suspicion to search and seize defendant. See *Id.* ¶ 11; *People v. Hester*, 271 Ill. App.

3d 954, 956 (1995) ("The elements of unlawful possession of a weapon by a felon are that the defendant (1) knowingly possessed a firearm and (2) had a prior felony conviction."); *People v. Hughes*, 2015 IL 117242 ¶¶ 44-46 (holding where defendant did not produce an adequate record for the appellate court to review, the appellate court ought not to have decided factual issues anew).

¶ 24    Given this record, there are numerous unanswered factual questions that preclude us from deciding the substantive fourth amendment claims that underlie defendant's claim of ineffective assistance of counsel. See *Henderson*, 2013 IL 114040, ¶ 15 (holding that part of finding counsel ineffective requires determining the merits of the unfiled motion to suppress). Specifically, we do not know why the officers believed that defendant was armed and dangerous, such that we may determine the reasonableness of the officers' protective search. Although we know Jaykishan contacted the police to remove a gun from his residence, we do not know if this information was communicated to the officers who testified that they responded to a call of a domestic disturbance. Further, although we know that Jaykishan allowed the officers into the condo, we do not know why the officers believed that defendant was armed and dangerous, such that we may determine the reasonableness of the officers' protective search. Theoharis and Jaykishan both testified they had a conversation before the officers entered the residence but neither testified to the contents of that conversation. Theoharis stated that defendant was patted down for officer safety, but did not testify about, whether prior to the seizure and search, he had a reasonable suspicion of criminal activity or that defendant was armed and dangerous. Accordingly, we decline to address defendant's ineffective assistance of counsel claim because the record, as it exists, is insufficient for us to determine whether trial counsel's decision to file a

motion to suppress evidence was strategic, or whether such a motion would likely have succeeded. *Veach*, 2017 IL 120649, ¶ 46. Our decision does not foreclose collateral relief under the Post-Conviction Hearing Act. See 725 ILCS 5/122-1 *et seq.* (West 2018).

¶ 25 In reaching this conclusion, we are not persuaded by defendant's reliance on *Henderson*, 2013 IL 114040, in support of his argument that the record is sufficient to consider his claims. Here, unlike in *Henderson*, the State did not waive the argument regarding the sufficiency of the record. *Id.* ¶ 23 ("the State cannot assert a new theory inconsistent with the position it adopted in the appellate court"). Additionally, in *Henderson*, the record included the type of testimony that would have been presented in a suppression hearing. *Id.* ¶ 22. In this case, there was a significant lack of questioning and testimony about the officers' informational basis for the search and seizure of defendant because it was irrelevant to the charges of UUWF. Stoy's testimony at the trial and suppression hearing does not clarify reasons for the prior officers' seizure and search.

¶ 26 Upon a finding that the record is insufficient defendant asks this court to remand for the limited purpose of holding a suppression hearing and to retain jurisdiction. We decline defendant's invitation to do so, noting that the appropriate remedy here was for defendant to file a post-conviction petition under the Act. *Bew*, 228 Ill. 2d at 134; *People v. Carrera*, 239 Ill.2d 241, 259 (2010) ("[D]efendant has a remedy to challenge his conviction, so long as the challenge is made while defendant is serving the sentence imposed on that conviction. While sympathetic to defendant's plight, this court cannot expand the remedy set forth."); *People v. Harris*, 224 Ill. 2d 115, 126 (2007) (there is no prohibition against defendant seeking relief under the Act while his direct appeal was pending).

¶ 27 For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

¶ 28    Affirmed.