# ILLINOIS OFFICIAL REPORTS

***People v. Henderson*, 2011 IL App (1st) 090923**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONTE HENDERSON, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-09-0923 |
| Rule 23 Order filed | July 21, 2011 |
| Rule 23 Order withdrawn | November 10, 2011 |
| Opinion filed | November 17, 2011 |

| | |
|---|---|
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant had served his sentences and mandatory supervised release terms for multiple convictions for offenses committed when he was 16 years of age, defendant's appeal from the summary dismissal of his *pro se* postconviction petition was moot and his claim that the guilty plea proceedings violated his right to due process did not fall under any exception to the mootness doctrine, but pursuant to the public interest exception, the appellate court held that the unnotarized verification affidavit attached to the petition was not an appropriate basis for the summary dismissal, and furthermore, the claim, which defendant raised for the first time on appeal, that his conviction for unlawful delivery of a controlled substance within 1,000 feet of a school was void because the automatic transfer provision of the Juvenile Court Act did not authorize his transfer to criminal court was properly before the appellate court and was rejected, where defendant failed to show he was not charged with being on a public way and, in the absence of such a showing, he could not demonstrate that the automatic transfer provision was improperly invoked. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 05-C6-60799, 06-CR-03910, 06-CR-01515; the Hon. Frank G. Zelezinski, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Unsinn, Alan D. Goldberg, and Pamela Rubeo, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE LAVIN delivered the judgment of the court, with opinion. |
| | Justices Pucinski and Salone concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Donte Henderson appeals from the trial court's summary dismissal of his petition filed under the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq*. (West 2008)). In his petition, defendant challenged negotiated guilty pleas entered in three different cases because he was aggrieved at not being admitted to boot camp, as allegedly promised pursuant to the plea agreements. On appeal, defendant asserts that the trial court erroneously dismissed his petition because it presented a claim that was neither frivolous nor patently without merit. Defendant also argues for the first time that his conviction for delivery of a controlled substance within 1,000 feet of a school is void because the automatic transfer provision of the Juvenile Court Act of 1987 (the Juvenile Act) (705 ILCS 405/5-130(2)(a) (West 2004)) did not authorize his transfer from juvenile court to criminal court. We affirm.

¶ 2                              I. BACKGROUND

¶ 3    In 2006, defendant entered negotiated guilty pleas to delivery of a controlled substance within 1,000 feet of a school (No. 05 C6 60799), possession of a controlled substance with intent to deliver (No. 06 CR 03910) and aggravated battery of a correctional officer (No. 06 CR 01515). At a hearing before Judge Kenneth Wadas on October 17, 2006, defense counsel

-2-

represented that pursuant to an agreement with the State, defendant would plead guilty to aggravated battery of a correctional officer in exchange for three years in prison "with a Boot Camp recommendation" and that his sentence would be served concurrently with the sentences to be imposed in defendant's other two cases. When asked whether he had been promised anything other than a sentence of three years in prison with a "recommendation of impact incarceration, also known as Boot Camp," defendant answered no. After defendant was admonished and the State recited the factual basis for the offense, the court accepted defendant's guilty plea and sentenced him to three years in prison, to run concurrently with his other two sentences, and a "[r]ecommendation of Impact Incarceration, also known as Boot Camp." The written sentencing order reflects defendant's sentence as pronounced by the court and states, "recommended for bootcamp."

¶ 4    At a hearing before Judge Christopher Donnelly the next day, defense counsel stated that defendant was entering guilty pleas in both controlled substance cases in exchange for "the recommended sentence of four years Illinois Department of Corrections with boot camp to run concurrent" with his sentence for aggravated battery of a correctional officer. In admonishing defendant, the court stated, "[o]ther than the plea agreement stated here in open court by your attorney, did anybody make any promises to you about what I would or would not do if you pled guilty today?" Defendant answered no. Following further admonishments and the recitation of the factual bases for defendant's offenses, the court accepted defendant's guilty pleas. The court subsequently sentenced defendant to "four years Illinois Department of Corrections with a boot camp recommendation," to be served concurrently with each other as well as his sentence for aggravated battery of a correctional officer. At the end of the hearing, the following colloquy ensued:

"DEFENDANT: They told me I might not be able to get boot camp because I was on psych medication. If I don't be able to get it–

THE COURT: Then you will be brought back to this Court, and we will have to do something else."

The sentencing orders regarding defendant's controlled substance convictions state "[i]t is further ordered that with boot camp." Defendant did not file a direct appeal in any of the three cases.

¶ 5    On December 10, 2008, defendant filed a *pro se* petition for postconviction relief, in which he essentially alleged, in pertinent part, that his guilty pleas were involuntary and he did not receive the benefit of his bargain because he pled guilty specifically in exchange for the promise of boot camp, which he did not receive. Attached to the petition was an unnotarized affidavit signed by defendant, in which he swore to the truth of the allegations in his petition pursuant to section 1-109 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/1-109 (West 2008)). On February 9, 2009, Judge Frank Zelezinski summarily dismissed defendant's petition as untimely and frivolous and patently without merit. On July 21, 2011, this court entered a decision affirming the trial court's judgment. We subsequently granted the appellate defender's petition for rehearing and accordingly, we consider defendant's appeal once more.

¶ 6                                    II. THE ACT

¶ 7        On appeal, defendant first asserts the trial court erred in summarily dismissing his petition because he alleged a constitutional claim which was neither frivolous nor patently without merit. Specifically, defendant contends that he presented sufficient allegations showing that he did not knowingly and voluntarily enter his guilty plea and did not receive the benefit of his bargain because he was falsely promised boot camp. The State contends, however, that the trial court's summary dismissal of defendant's petition was warranted because the petition was not verified by affidavit, as required by section 122-1(b) of the Act. 725 ILCS 5/122-1(b) (West 2008). The State does not dispute that defendant attached to his petition a document labeled as an "affidavit," declaring the truth of the allegations in his petition, but contends that this document does not constitute an affidavit because it was not notarized. Before we address the parties' arguments, an additional threshold matter has arisen pending a final judgment on appeal.

¶ 8        The parties do not dispute that defendant has completed his prison term. It has also come to our attention that pending a final judgment on appeal, defendant has successfully completed his mandatory supervised release (MSR) terms and, thus, is no longer serving a sentence in any of the three cases at issue. In the beginning of October, the website of the Illinois Department of Corrections (IDOC) indicated that defendant was scheduled to be fully discharged from MSR on October 19, 2011. As of that date, the website no longer shows that defendant is in the custody of the IDOC. See *People v. McKinney*, 399 Ill. App. 3d 77, 79 (2010) (finding that the reviewing court can take judicial notice of the IDOC's website). Because defendant's liberty is no longer encumbered by his convictions, we must consider whether the parties' contentions under the Act have been rendered moot.

¶ 9        Illinois appellate courts generally will not review moot issues. *People v. Kelly*, 397 Ill. App. 3d 232, 248 (2009). The purpose of the rule is for courts to avoid considering cases where the parties no longer have a personal stake in the case's outcome. *Id.* at 249. In addition, an issue may become moot where circumstances change while an appeal is pending and prevent the reviewing court from being able to render effectual relief. *People v. Shum*, 207 Ill. 2d 47, 51 (2003). Intervening events may eliminate issues involved in the trial court. *People v. Roberson*, 212 Ill. 2d 430, 435 (2004). The question before us is whether defendant, who is in no way serving a sentence, may obtain relief under the Act or whether his release from MSR eliminates his standing to obtain relief under the Act, rendering the parties' arguments under the Act moot.

¶ 10       Section 122-1 of the Act states, in pertinent part, that "[a]ny person *imprisoned in the penitentiary* may institute a proceeding under this Article." (Emphasis added.) 725 ILCS 5/122-1 (West 2008). A remedy under the Act is only available to persons who are actually being deprived of their liberty, not persons who have completely served their sentences and merely wish to purge their criminal records of past convictions. *People v. Carrera*, 239 Ill. 2d 241, 257 (2010); *People v. Martin-Trigona*, 111 Ill. 2d 295, 299 (1986) (citing *People v. Dale*, 406 Ill. 238, 246 (1950)). Thus, a defendant's liberty interest is paramount under the Act. *People v. Pack*, 224 Ill. 2d 144, 150 (2007).

¶ 11       A defendant's liberty is constrained if he is always on a string that the State may pull

-4-

when it pleases. *People v. Rajagopal*, 381 Ill. App. 3d 326, 329 (2008). Thus, a defendant retains standing under the Act so long as he is challenging a conviction for which he continues to serve some form of sentence so that his liberty would be directly affected by invalidating his conviction. *People v. Dent*, 408 Ill. App. 3d 650, 654 (2011). As with incarceration, restraints on a person's liberty accompanying parole, probation and release on appeal bond are unacceptable when imposed in violation of his constitutional rights. *Martin-Trigona*, 111 Ill. 2d at 300. A defendant who is no longer on parole, however, lacks standing to file a postconviction petition. *People v. Steward*, 406 Ill. App. 3d 82, 90 (2010). When a defendant's conviction is no longer an encumbrance, he no longer needs assistance from the Act to secure his liberty and, thus, the Act is no longer available to him. *People v. Downin*, 394 Ill. App. 3d 141, 144 (2009). Furthermore, this court has held that a lack of standing under the Act renders a petition frivolous and patently without merit and requires the petition to be summarily dismissed. *Steward*, 406 Ill. App. 3d at 90.

¶ 12     In *People v. Correa*, 108 Ill. 2d 541, 546-47 (1985), our supreme court found that the defendant was entitled to relief under the Act where he was serving the MSR portion of his sentence when he filed his petition. Notably, the supreme court did not state whether the defendant in *Correa* had already successfully completed his MSR term by the time the supreme court rendered its opinion or consider whether a defendant loses standing under the Act where he is released from MSR following the filing of his petition.

¶ 13     Our research reveals only one case in which a defendant completed his entire sentence, including parole, after he filed his postconviction petition but before this court entered a final judgment on appeal from the dismissal of his petition. *People v. Vunetich*, 185 Ill. App. 3d 415, 418 (1989). In *Vunetich*, this court rejected the State's argument that "the defendant lacks standing to file the petition." *Vunetich*, 185 Ill. App. 3d at 417, 419. The court found that "defendant was still subject to potential parole revocation *** when he filed his post-conviction petition. We accordingly find that defendant has standing to file his petition." *Vunetich*, 185 Ill. App. 3d at 418-19. The court did not consider however, whether the defendant subsequently lost standing after the filing of his petition when he completed his parole term. Accordingly, we do not find *Vunetich* assists in our determination of whether a defendant loses standing under the Act where after the filing of his petition, he completes his MSR term so that no sentence remains to be served.

¶ 14     The aforementioned case law clearly demonstrates that the Act is not intended to purge a defendant's convictions where his liberty is not encumbered. Absent a deprivation of liberty, "the wrong which the Act was intended to remedy is nonexistent." *People v. Farias*, 187 Ill. App. 3d 879, 884 (1989). We find no meaningful distinction to be drawn between instances where the defendant's liberty is not encumbered when he files the petition and those instances in which a defendant regains his liberty after the petition is filed. The purpose of the Act would not be fulfilled by giving either defendant relief. He is no longer on that string and the State cannot affect his liberty at present.

¶ 15     Here, defendant has completed his MSR term and, thus, no longer needs the Act's assistance to secure his liberty. Accordingly, defendant has lost standing under the Act, a defect that cannot be cured. Even if we were to remand this cause for further proceedings, the trial court would be obligated to deny defendant relief at the second stage due to this

defect. As a result, the parties' arguments under the Act have become moot. Having acknowledged that fact, we hasten to note the three exceptions to the mootness doctrine: (1) the public interest exception; (2) the "capable of repetition yet evading review" exception; and (3) the collateral consequences exception. *In re Vanessa K.*, 2011 IL App (3d) 100545, ¶ 14.

¶ 16    The public interest exception permits a court to consider an otherwise moot issue when (1) the question presented is of a public nature; (2) an authoritative determination is necessary for the future guidance of public officers; and (3) a likelihood exists that the question will recur. *People v. Horsman*, 406 Ill. App. 3d 984, 986 (2011). We find the State's argument falls within this exception. The question of whether the trial court can summarily dismiss a petition due to an unnotarized verification affidavit is clearly a question of a public nature. It affects the large number of criminal defendants who file petitions every year. *People v. Coupland*, 387 Ill. App. 3d 774, 777 (2008) (finding that questions of a public nature include issues that affect a large number of the public or issues of public importance). We also find an authoritative determination is necessary for the future guidance of trial court judges, who are public officers. See *Kelly*, 397 Ill. App. 3d at 250. Only one case has addressed the precise issue before us and for reasons to be explained, we disagree with that decision. Finally, a likelihood exists that this issue will arise in the future in light of the sheer volume of petitions being filed and the fact that this is at least the second case this year in which the State has argued that this is an appropriate basis for first-stage dismissal. Accordingly, we will consider the verification affidavit issue pursuant to the public interest exception. On the other hand, we do not find that defendant's claim that the guilty plea proceedings violated his right to due process falls under any exception to the mootness doctrine.

¶ 17    Defendant's argument that his guilty plea was not knowingly and voluntarily entered and that he otherwise did not receive the benefit of his bargain is based on the specific comments made by counsel and the court in this particular case. We find it unlikely that this question will recur, thus rendering the public interest exception inapplicable. To fall within the "capable of repetition yet evading review" exception, (1) the challenged action must be too short in duration to be fully litigated prior to its cessation; and (2) a reasonable expectation must exist that the same party will be subject to the same action again. *Kelly*, 397 Ill. App. 3d at 249. Because defendant has fully completed his sentence and is no longer encumbered by his conviction, he will not be subjected to the same action again.

¶ 18    As for the collateral consequences exception, it applies only where a party is threatened by or has suffered from an actual injury that can be traced to another party and is likely to be redressed if the court renders a favorable judicial decision. *In re Vanessa K.*, 2011 IL App (3d) 100545, ¶ 16. Here, even if we were to determine that defendant's guilty plea in this case violated due process, defendant could not obtain redress. Assuming defendant's claim was neither frivolous nor patently without merit, this court would generally only have one course of action available, *i.e.,* remand for second-stage proceedings under the Act. The relief defendant ultimately seeks, however, is to withdraw his guilty pleas. Because defendant has lost standing under the Act, no court could grant defendant the relief he ultimately desires. Defendant will obtain no redress from a determination that his due process rights were

violated but that his conviction must nonetheless stand. Accordingly, the collateral consequences exception does not apply.

¶ 19 Having determined that the issue concerning the unnotarized verification affidavit falls within an exception to the mootness doctrine, we now consider whether this alleged defect warrants the summary dismissal of a defendant's petition. To assist with our determination, we consider the procedural structure of the Act. In noncapital cases, there are three stages under the Act (*People v. English*, 406 Ill. App. 3d 943, 952 (2010)), the first two of which are relevant to our present inquiry. We review the trial court's summary dismissal of a postconviction petition at the first stage *de novo. People v. Brown*, 236 Ill. 2d 175, 184 (2010). The pleading requirements of the Act are found in section 122-2 (see *People v. Hodges*, 234 Ill. 2d 1, 9 (2009)), which requires that the petition "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2008). Section 122-2 also requires that "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2008).

¶ 20 At the first stage of proceedings, the petition's allegations, construed liberally and taken as true, need only present the gist of a constitutional claim. *Brown*, 236 Ill. 2d at 184. If "the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition." 725 ILCS 5/122-2.1(a)(2) (West 2008). At this stage, the court does not measure the petition's procedural compliance but, rather, its substantive virtue. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). If the trial court does not dismiss the petition as frivolous or patently without merit, it proceeds to the second stage, where the defendant is appointed counsel. *Hodges*, 234 Ill. 2d at 10. After appointed counsel has made any necessary amendments to the petition, the State is permitted to move to dismiss the petition. *English*, 406 Ill. App. 3d at 953.

¶ 21 In addition to the pleading requirements of section 122-2, section 122-1(b) of the Act provides that "[t]he proceeding shall be commenced by filing with the clerk of the court in which the conviction took place a petition (together with a copy thereof) verified by affidavit." 725 ILCS 5/122-1(b) (West 2008). Unlike the section 122-2 affidavit, which shows that the allegations can be objectively and independently corroborated, the verification affidavit requirement of section 122-1, "like all pleading verifications, confirms that the allegations are brought truthfully and in good faith." *People v. Collins*, 202 Ill. 2d 59, 67 (2002). The question before us is whether unnotarized statements declaring the truth of the allegations constitute a verification affidavit and, if not, whether this deficiency is a basis for dismissing a petition at the first stage of proceedings.

¶ 22 Our supreme court has held that a statement in writing which is not sworn to before an authorized individual is not an affidavit but, rather, is a nullity. *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 494, 497 (2002). In examining the "affidavit of intent" contemplated by Illinois Supreme Court Rule 315(b) (eff. Oct. 1, 1997), the court observed that although "affidavit" was not defined in the rule, courts had consistently defined an affidavit as a declaration, under oath and in writing, that has been sworn to by a party before a person with authority under the law to administer oaths. *Roth*, 202 Ill. 2d at 492-93. In reaching this decision, the court clarified a decision of the court rendered several months

-7-

earlier in *Robidoux v. Oliphant*, 201 Ill. 2d 324, 343, 347 (2002), which held that an affidavit need not be notarized to comply with Illinois Supreme Court Rule 191(a) (eff. Aug. 1, 1992).

¶ 23 The supreme court clarified in *Roth* that its *Robidoux* decision was limited to Rule 191(a), which, in contrast to Rule 315(b), specifically stated what was required of an affidavit filed pursuant to that rule. *Roth*, 202 Ill. 2d at 495-96. Following *Roth* and *Robidoux*, this court has had but few opportunities to consider the effect of an unnotarized affidavit on postconviction proceedings. *People v. Niezgoda*, 337 Ill. App. 3d 593 (2d Dist. 2003); *People v. Carr*, 407 Ill. App. 3d 513 (2d Dist. 2011); *People v. Wilborn*, 2011 IL App (1st) 092802 (this opinion has not yet been released and is subject to being modified or withdrawn); *People v. Nitz*, 2011 IL App (2d) 100031 (this opinion has not yet been released and is subject to being modified or withdrawn).

¶ 24 In *Niezgoda*, the defendant appealed from the second-stage dismissal of his petition. On appeal, the Second District considered whether the defendant's supporting affidavits pursuant to section 122-2 were sufficient to be considered under the Act where they were not notarized. *Niezgoda*, 337 Ill. App. 3d at 596. After considering *Roth* and *Robidoux*, the court found the unnotarized affidavits were insufficient. *Id*. at 596-97. The court determined that *Roth* governed what was required to constitute an affidavit in Illinois and that *Robidoux* was a mere exception. *Id*. at 597. Thus, unless otherwise provided for by a specific statute, an affidavit must be notarized to be valid. *Id*. The court concluded that because the Act provided no specific affidavit requirements, an affidavit must be notarized to be valid under the Act. *Id*. Accordingly, the court determined that the defendant's unnotarized affidavits pursuant to section 122-2 were invalid and he had failed to comply with the Act, requiring the dismissal of his petition without an evidentiary hearing. *Id*.

¶ 25 Recently, in *Carr*, the defendant appealed from the summary dismissal of his *pro se* postconviction petition. *Carr*, 407 Ill. App. 3d at 515. Relying on *Niezgoda*, the Second District held that because the defendant's section 122-1 affidavit was not notarized, it was not valid. *Id*. The court also declined to distinguish affidavits filed pursuant to section 122-1 from the section 122-2 affidavit at issue in *Niezgoda* because *Niezgoda* held that the notarization requirement for affidavits applies to the entire Act. *Id*. Accordingly, the court did not consider the differing purposes of the two affidavit requirements or that, unlike *Niezgoda*, the petition at issue had been dismissed at the first stage. The court found that because the defendant's section 122-1 affidavit was not notarized, it was not valid and he was not entitled to relief. *Id*. at 516.

¶ 26 Following the earlier decision entered in the case *sub judice*, a panel of the First District of this court affirmed the first-stage dismissal of a *pro se* postconviction petition based on the defendant's failure to attach a supporting affidavit to his petition pursuant to section 122-2, as the attached "affidavit" was not notarized. *Wilborn*, 2011 IL App (1st) 092802, ¶¶ 1, 71. In support of his petition, the defendant had attached an "affidavit" signed by his codefendant. *Id.* at ¶¶ 3, 39. The codefendant stated therein that he declared under penalty of perjury that the content of his affidavit was true "[p]ursuant to *** 735 ILCS 5/1-109," and explained that his affidavit was "not notarized [because the] Menard Correctional Center law library refused to do so." *Id.* at ¶ 39. Relying on *Roth* and *Niezgoda*, the court found that the codefendant's affidavit was not a valid section 122-2 affidavit. *Id*. at ¶¶ 69-77. The court

rejected the defendant's argument that the codefendant's statement certifying his affidavit pursuant to section 1-109 of the Code (735 ILCS 5/1-109 (West 2008)) was the equivalent of notarization. *Wilborn*, 2011 IL App (1st) 092802, ¶¶ 72-75.

¶ 27    Most recently, in *Nitz*, the Second District of this court found that the defendant's postconviction petition was defective at the second stage of proceedings because it was not accompanied by a notarized affidavit pursuant to section 122-1(b) of the Act, but also found postconviction counsel provided unreasonable assistance by failing to remedy the lack of a notarized affidavit. *Nitz*, 2011 IL App (2d) 100031, ¶¶ 19-21. In reaching its decision, the court found that certification pursuant to section 1-109 of the Code was not sufficient to verify a petition under the Act. *Id.* at ¶¶ 13-16.

¶ 28    Justice Robert D. McLaren, who had concurred in the *Carr* decision, specially concurred with the decision in *Nitz*. Justice McLaren indicated, in pertinent part, that had the State raised the issue regarding this affidavit requirement in the trial court, it could have been addressed and resolved, and he found that this issue was not properly before the reviewing court in light of the State's procedural default. *Nitz*, 2011 IL App (2d) 100031, ¶¶ 25, 27 (McLaren, J., specially concurring). Justice McLaren also found that "the *Carr* decision created an anomaly better left alone." *Nitz*, 2011 IL App (2d) 100031, ¶ 26 (McLaren, J., specially concurring). Justice McLaren further opined that the decision regarding the unnotarized affidavit in *Carr* had "questionable value with regard to the efficient disposition of postconviction petitions." *Id.*

¶ 29    Hewing to the tenets of *Roth,* we are consonant with the holdings of the aforementioned cases that any affidavit filed pursuant to the Act must be notarized. This does not end our inquiry, however, as not every defect in a petition warrants summary dismissal. As stated, section 122-2.1(a)(2) of the Act governs first-stage dismissals and provides that "[i]f the petitioner is sentenced to imprisonment and the court determines the petition is *frivolous or is patently without merit*, it shall dismiss the petition." (Emphasis added.) 725 ILCS 5/122-2.1(a)(2) (West 2008).

¶ 30    Our supreme court has had several opportunities to interpret and apply the "frivolous and patently without merit" test. In *Collins*, our supreme court held that because the defendant's petition did not include affidavits, records or other evidence supporting his claims, as required by section 122-2, the trial court "properly dismissed that petition as frivolous and patently without merit." *Collins*, 202 Ill. 2d at 69. The court found that the purpose of a section 122-2 affidavit was to demonstrate that the allegations can be objectively and independently corroborated. *Id.* at 67.

¶ 31    Shortly thereafter, in *People v. Boclair*, 202 Ill. 2d 89, 99 (2002), our supreme court held that the Act does not permit the summary dismissal of a petition based on untimeliness. In reaching this decision, the court found that neither "frivolous" nor "merit," by its traditional definition included issues of timeliness. *Id.* at 101. The court also observed that by addressing untimeliness and frivolousness in separate statutory provisions, the legislature plainly intended to distinguish between these two different flaws. *Id.* In addition, the court found that timeliness was not an inherent component of the right to file a postconviction petition and that time limitations in the Act should be treated as affirmative defenses that can

be raised or forfeited by the State. *Id*. The court stated, "[t]he process at the summary review stage measures a petition's substantive virtue rather than its procedural compliance." *Id.* at 102.

¶ 32    In *People v. Blair*, 215 Ill. 2d 427, 430, 442 (2005), the supreme court found that the legislature intended for the trial court to be permitted to summarily dismiss petitions based on *res judicata* and waiver. The court found that the terms "frivolous" and "patently without merit" encompassed both *res judicata* and forfeiture, which were themselves inherently legal determinations that could bar relief under the Act. *Id.* at 445. The court found that an otherwise meritorious claim has no legal basis if the claim is barred by *res judicata* or forfeiture and that this legal component was consistent with being frivolous and patently without merit. *Id*. In distinguishing *res judicata* and forfeiture from untimeliness, the court observed that the former requirements, unlike the latter requirement, were not included in a separate provision of the Act but, rather, fell within the plain language of "frivolous *** or patently without merit." *Id*.

¶ 33    More recently, in *Hodges*, the supreme court reiterated that although a defendant must allege the gist of a constitutional claim, the standard for evaluating a petition at the first stage was the "frivolous or patently without merit" test. *Hodges*, 234 Ill. 2d at 11. Accordingly, a petition will avoid dismissal if it is neither frivolous nor patently without merit. *Id*. The court explained that a petition is frivolous or patently without merit only if it has no arguable basis in law or fact, *i.e.*, the petition is based on an indisputably meritless legal theory or fanciful allegations. *Id*. at 16. In addition, a legal theory that is contradicted by the record is indisputably meritless. *Id*. We further note that in its application of the "frivolous and patently without merit" test, the supreme court considered the affidavit requirement of section 122-2 in determining whether the petition had a factual basis sufficient to survive the first stage. *Id*. at 18; see also *Brown*, 236 Ill. 2d at 185-86 (the supreme court considered the section 122-2 affidavits during the first stage of proceedings in determining whether the allegations presented an arguable factual basis).

¶ 34    A review of the foregoing supreme court decisions demonstrates that the Act allows summary dismissal only where a defect renders a petition frivolous or patently without merit. By their traditional meaning, we do not find those terms would encompass the mere lack of notarization of a verification affidavit. *Cf. Steward*, 406 Ill. App. 3d at 90 ("We conclude that the legislature intended that the phrase 'frivolous or *** patently without merit' encompass the issue of standing because under *Boclair*, 'merit' means legal significance and *standing*." (Emphasis in original.) (quoting *Boclair*, 202 Ill. 2d at 101)). Notarization of the verification affidavit has no relation to the substance of a defendant's alleged constitutional claim. Unlike *res judicata* and waiver, a lack of notarization would not leave an otherwise meritorious claim without a legal basis. We also observe that a lack of notarization does not affect the veracity of the allegations and that similar to the defect of untimeliness, the legislature has addressed the issues of verification and frivolousness in separate statutory provisions. Furthermore, unlike a section 122-2 affidavit, a section 122-1 verification affidavit does not show that the defendant's allegations can be corroborated and is not considered when determining whether a defendant has a factual basis for his claims. Even where a section 122-1 affidavit is a technical nullity for lack of notarization, this simply does not affect the

petitioner's claims or right to relief. Simply stated, since an unnotarized verification affidavit cannot render a petition frivolous or patently without merit, it cannot be condoned as a proper basis for first-stage dismissal of a postconviction petition. As a result, we disagree with *Carr*.

¶ 35    We are also persuaded that the purposes of the Act and section 122-2.1 would be hindered by preventing petitions which are neither frivolous nor patently without merit from proceeding to the second stage due to the technicality at issue. See *Blair*, 215 Ill. 2d at 437, 447 (the Act is a procedural mechanism which permits a defendant to assert that a substantial denial of his constitutional rights occurred in the proceedings which resulted in his conviction and section 122-2.1 sets forth a simplified procedure to ensure that the criminal justice system's limited resources are expended where they are most needed). At the second stage, the State will have the opportunity to object to the lack of notarization (see *Nitz*, 2011 IL App (2d) 100031, ¶¶ 25-27 (McLaren, J., specially concurring)), and appointed counsel can assist in arranging for the notarization of the verification affidavit (see *Nitz*, 2011 IL App (2d) 100031, ¶¶ 18, 19).

¶ 36    We further find that addressing this defect at the second stage of proceedings comports with practical considerations which arise in the prison system. Defendant argues that *pro se* postconviction petitions are typically filed by prisoners and that there is no guarantee that "such petitioners are regularly afforded the services of a notary public." Defendant has also attached to his reply brief a memorandum, written by an employee of the IDOC, which referred to the vacancies in prison library staff positions statewide and periods of time where staff members lacked notary status. Although documents attached to the appendix are not properly before us (*People v. Spencer*, 408 Ill. App. 3d 1, 6 (2011)), we note that the codefendant in *Wilborn* similarly represented that he was unable to have his affidavit notarized in prison. We need not address the result in *Wilborn*, as that case did not present an issue identical to the one before us. Nonetheless, the codefendant's affidavit in that case indicates that petitioners may lack the ability to have their petitions notarized, not because they are *pro se* litigants, but because they are prisoners, subject to the restrictions imposed by their jailers and the limited resources provided by the State. If a correctional institution does not provide the defendant a means to appear before a notary, he is singularly without the means to comply with section 122-1(b). See 5 ILCS 312/6-102 (West 2008) (the defendant must appear before the notary in order to have his affidavit notarized). If the defendant's petition survives the first stage, however, appointed counsel can arrange for the defendant to meet with a notary. In light of the high volume of postconviction petitions that are filed and the lack of case law addressing this precise issue, it also appears that trial courts have not been summarily dismissing petitions on this basis and our determination comports with the practice in the trial court. Accordingly, contrary to *Carr*, we find that an unnotarized verification affidavit is not an appropriate basis for first-stage dismissal of a petition.

¶ 37                    III. AUTOMATIC TRANSFER PROVISION

¶ 38    Defendant next contends that his conviction for delivery of a controlled substance within 1,000 feet of a school is void because he was a minor, age 16, at the time of the offense and

was not charged with being on a public way at the time he committed the offense, as required to authorize his transfer to adult criminal court pursuant to section 5-130(2)(a) of the Juvenile Act. 705 ILCS 405/5-130(2)(a) (West 2004). A closer inspection of defendant's argument reveals, however, that he does not know what the indictment alleged but, rather, presumes based on inferences from statements made on the record that he was not charged with being on a public way. As a threshold matter, the State contends that defendant has forfeited this argument because it was not included in his initial petition for postconviction relief. See *People v. Jones,* 211 Ill. 2d 140, 148 (2004) (generally, the only question that can be raised on appeal from the denial of a postconviction petition is whether the allegations in the petition are sufficient to invoke relief under the Act). It is well established, however, that a void judgment may be attacked directly or collaterally in any court at any time. *People v. Spears*, 371 Ill. App. 3d 1000, 1006-07 (2007). We note that another panel of the First District recently held that because the defendant had no standing to file a petition under the Act, the reviewing court could not consider the defendant's claim that his sentence was void. *People v. Vinokur*, 2011 IL App (1st) 090798, ¶¶ 14-16, 18 (this opinion has not yet been released and is subject to being modified or withdrawn). In reaching this decision, the *Vinokur* court relied on *People v. Flowers*, 208 Ill. 2d 291 (2003).

¶ 39    In *Flowers*, the supreme court found that the trial court lacked subject matter jurisdiction over an untimely posttrial motion. *Id*. at 304, 306. The supreme court also found that, as a result, the appellate court's jurisdiction was limited to considering the trial court's lack of jurisdiction and did not extend to the merits of the defendant's appeal. *Id.* at 307. The supreme court further rejected the defendant's attempt to challenge a portion of her sentence as void. *Id*. at 307-08. Specifically, the supreme court stated that "[a]lthough a void order may be attacked at any time, the issue of voidness must be raised in the context of a proceeding that is properly pending in the courts. If a court lacks jurisdiction, it cannot confer any relief, even from prior judgments that are void." *Id*. at 308. "[T]he appellate court is not vested with authority to consider the merits of a case merely because the dispute involves an order or judgment that is, or is alleged to be, void." *Id*.

¶ 40    We disagree with the *Vinokur* court's determination that a lack of standing has the same effect as the jurisdictional defect addressed in *Flowers*. See *Vinokur*, 2011 IL App (1st) 090798, ¶ 18. Standing has no effect on subject matter jurisdiction in Illinois (*People v. Four Thousand Eight Hundred Fifty Dollars ($4,850) United States Currency*, 2011 IL App (4th) 100528, ¶ 14) and the parties here do not dispute the jurisdiction of the trial court or this court. Accordingly, this matter is properly pending before us, even if defendant has lost standing to obtain relief under the Act following the filing of his appeal.

¶ 41    We now address defendant's contention that his conviction is void. Whether a judgment is void presents a legal question, which we review *de novo*. *People v. Hauschild,* 226 Ill. 2d 63, 72 (2007); *People v. Rodriguez,* 355 Ill. App. 3d 290, 291 (2005). A judgment is void, as opposed to voidable, only where the trial court lacked jurisdiction or exceeded its statutory authority to act. *People v. Smith*, 406 Ill. App. 3d 879, 887 (2010). Section 5-120 of the Juvenile Act provides, with certain limited exceptions, that "no minor who was under 17 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State." 705 ILCS 405/5-120 (West 2004). Defendant acknowledges that the State

represented in the trial court that defendant's case was transferred to criminal court pursuant to an exception in section 5-130 of the Juvenile Act. That section provides, in pertinent part, as follows:

> "The definition of a delinquent minor under section 5-120 of this Article shall not apply to any minor who at the time of the offense was at least 15 years of age and who is *charged* with an offense under Section 401 of the Illinois Controlled Substances Act, while *** on a public way within 1,000 feet of the real property comprising any school, regardless of the time of day or the time of year. *** These *charges* and all other *charges* arising out of the same incident shall be prosecuted under the criminal laws of this State." (Emphasis added.) 705 ILCS 405/5-130(2)(a) (West 2004).

Thus, it is clear that the question of whether section 5-130 authorizes defendant's automatic transfer to adult criminal court depends on the allegations in the charges. The parties do not dispute that here, defendant was charged with violating section 401 of the Illinois Controlled Substances Act (720 ILCS 570/401 (West 2004)) and that he was charged with committing the offense within 1,000 feet of a school. This is corroborated by the record, which shows defendant was convicted of violating section 407(b), which specifically applies where the defendant has violated section 401 within 1,000 feet of a school. 720 ILCS 570/407(b)(2) (West 2004). Here, the question is whether defendant can show his conviction is void because he was not charged with being on a public way.

¶ 42 In *Rodriguez*, the defendant, who had been a minor at the time the offenses were committed, was found guilty of two counts of unlawful delivery of a controlled substance following a stipulated bench trial and was sentenced to six years in prison. *Rodriguez,* 355 Ill. App. 3d at 291-92. The trial court had granted the State's motion for the automatic transfer of the defendant's charges pursuant to a prior provision of the Juvenile Act requiring transfer where the offense was committed on a public way. *Id*. at 292. This was because the defendant was alleged to have sold drugs in a gas station parking lot, which the trial court believed constituted a public way. *Id*. at 291. Several years after the defendant's direct appeal, he filed what was characterized as a petition pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2002)). *Rodriguez,* 355 Ill. App. 3d at 292-93.

¶ 43 On appeal, the defendant claimed his conviction was void because the gas station parking lot where the offense was alleged to have occurred was not a public way and absent an allegation that his offense occurred on a public way, the transfer provision of the Juvenile Act did not authorize the court to treat him as an adult. *Id*. at 293. Ultimately, the reviewing court agreed, finding that the Juvenile Act did not authorize the automatic transfer of defendant to criminal court because a gas station does not constitute a public way. *Id*. at 295-96. The reviewing court stated that the court lacks the power to impose a criminal conviction and sentence where the Juvenile Act mandates a juvenile adjudication and juvenile punishment. *Id*. at 296. Thus, where the defendant erroneously receives a criminal conviction, his conviction is void. *Id.* at 296; but see *People v. Arnold*, 323 Ill. App. 3d 102, 108 (2001) (a defendant can waive the right to be tried as a juvenile if he fails to make age an issue); *People v. Hall*, 55 Ill. App. 3d 341, 343 (1977) (observing that prior Illinois case law suggests that the prosecution of a juvenile in criminal court without regard to the transfer provisions of the Juvenile Act will render a judgment voidable, not void).

¶ 44    Even assuming *Rodriguez* correctly indicates that an improper transfer from the juvenile court to the adult court can render a criminal judgment void, defendant in this case cannot demonstrate his transfer was improper. Unlike *Rodriguez*, where there was no issue regarding what the charging instrument alleged, here, defendant cannot demonstrate what the charging instrument stated, as the indictment is not included in our record on appeal and defendant waived the reading of the indictment in court.

¶ 45    It is generally the appellant's burden to properly complete the record on appeal. *People v. Salgado*, 263 Ill. App. 3d 238, 245 (1994). Any doubts arising from the incompleteness of the record will be construed against the appellant and in favor of the judgment rendered in the lower court. *People v. Barker,* 403 Ill. App. 3d 515, 523 (2010). However, there are circumstances when this rule will be relaxed. This occurs when the defendant can prove that the record is incomplete due to no fault of his own, as well as demonstrate that there is a colorable need for the missing portion of the record in order to have appellate review. *People v. Appelgren*, 377 Ill. App. 3d 137, 142-43 (2007). If the defendant can establish both prongs, the State then must show that there are other means in order to afford adequate review. *Id.*

¶ 46    Defendant represents that he has unsuccessfully attempted to obtain a copy of the indictment from the clerk's office. The State agrees that both parties' efforts to locate a copy of the charging instrument have been unsuccessful and concedes that defendant is not at fault for failing to include the charging document in the record on appeal. Notwithstanding this concession, the State argues we must presume defendant was properly transferred to criminal court because defendant has not established a colorable need for this missing portion of the record.

¶ 47    Having closely read the substance of defendant's argument on appeal, it is clear that defendant does not actually know whether or not he was charged with being on a public way. Defendant concedes that "we do not know the exact language used in the charging document." More importantly, defendant has not even generally stated what the missing indictment said. See also *People v. Banks*, 378 Ill. App. 3d 856, 866 (2007) (the defendant failed to argue that a colorable need for the missing video tape existed where the defendant failed "to articulate what the videotape would show"). Defendant also speculates that "[i]t is just as likely that Henderson was standing on a private porch or in a private yard as opposed to the city street." Thus, defendant concedes that he may have been standing in the street, a public way, when he committed the offense. It follows that the indictment may also have charged defendant with committing the offense on a public way. See *People v. Sims*, 403 Ill. App. 3d 9, 17 (2010) ("It is not enough to say that as a result of the missing records we do not know whether any error occurred."). Thus, it appears from defendant's arguments that it is equally probable that an error did or did not occur but that he urges us to assume the former. Furthermore, defendant's decision to waive the reading of the indictment and counsel's decision not to challenge defendant's transfer to criminal court suggests that counsel's review of the indictment revealed no defects. *Cf. Appelgren*, 377 Ill. App. 3d at 140, 144 (where the defendant asserted on appeal that the State failed to prove him guilty beyond a reasonable doubt and had also challenged at trial the accuracy of the State's most significant piece of evidence, the defendant demonstrated a colorable need for such evidence on appeal). We will not equate defendant's fishing expedition with a colorable need for the

indictment.

¶ 48     The record does not otherwise assist defendant. Although defendant's age was mentioned and discussed, defendant never formally presented any argument objecting to his transfer to the adult criminal court. At a hearing before Judge Thomas J. Condon on May 23, 2005, defense counsel stated, "I'm trying to figure out why this boy is up here. He's 16 years of age, possession with Intent. I haven't seen anything statutorily that says–." The court then stated, "It's not an automatic transfer case the best I can tell." The State responded that it was an automatic transfer case because it was "[w]ithin a thousand feet of a school." After defense counsel questioned whether that factor required an automatic transfer, the case was passed for the State to consult its coordinator. When the case was recalled, the State again represented that this was an automatic transfer case because defendant was within 1,000 feet of a school and stated that "they take it very seriously when they sell drugs near schools." Defense counsel made no objection. Contrary to defendant's suggestion, none of the aforementioned statements show that defendant was not charged with committing the offense on a public way. The State's representation that defendant was subject to automatic transfer because he was within 1,000 feet of a school was accurate, as defendant could not otherwise have been transferred. That the State may have omitted the other reason for the transfer, that defendant was charged with committing the offense on a public way, does not show that defendant was not so charged.

¶ 49     Defendant also relies on statements made at the arraignment hearing before Judge Reginald H. Baker. Because defendant waived a formal reading of the charge, no statements made at that hearing can be said to represent a full and accurate recitation of the indictment's allegations. The State represented that "[i]t's an automatic transfer case because it was delivery within five hundred feet of a school." We reiterate that this representation was accurate, even if incomplete. Furthermore, it is irrelevant that the factual basis for defendant's guilty plea did not state that the alleged offense occurred on a "public way." As defendant concedes, the offense for which he was convicted does not require as an element that the defendant be on a public way. See 720 ILCS 570/407(b)(2) (West 2004). Thus, whether defendant was on a public way was not essential to the factual basis for his guilty plea and it is not unexpected that such information would not be relayed in the factual basis. See *People v. Barker*, 83 Ill. 2d 319, 327-28 (1980) (for a factual basis to be sufficient, the record need only reflect a basis from which the trial court could reasonably determine that the defendant actually committed the offense).

¶ 50     As stated, defendant has not shown a colorable need for the indictment where his claim is entirely based on speculation. As a result, we construe any doubts arising from the missing indictment against defendant. Because the record does not otherwise show defendant was not charged with being on a public way, defendant cannot demonstrate that the judgment is void.

¶ 51     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 52     Affirmed.