NOTICE
Decision filed 08/05/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240669-U

NO. 5-24-0669

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Coles County. |
| | ) | |
| v. | ) | No. 15-CF-316 |
| | ) | |
| WYLESHA AYRES, | ) | Honorable |
| | ) | Mitchell K. Shick, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err in denying the defendant's motion to correct the mittimus and motion for reconsideration, where she was not on "home detention" for the purpose of receiving statutory sentencing credits. Therefore, the judgment of the circuit court is affirmed.

¶ 2    Defendant, Wylesha Ayres, pled guilty to involuntary manslaughter pursuant to an open plea agreement. The circuit court sentenced her to nine years in the Illinois Department of Corrections (IDOC) and awarded her 269 days of sentencing credit for time spent in jail and on electronic monitoring, GPS monitoring, or home confinement. The defendant filed a motion asking the court to correct the mittimus, arguing that it failed to credit her for completing substance abuse treatment programs while on home confinement prior to sentencing. She now appeals from the

1

circuit court's denial of that motion and her subsequent motion to reconsider. For the following reasons, we affirm.

¶ 3                               I. BACKGROUND

¶ 4     Defendant was originally charged with one count of drug-induced homicide for selling heroin to someone who later overdosed on the drug. Pursuant to the circuit court's order following an initial bond hearing, defendant was released on a recognizance bond conditioned upon her entering residential substance abuse treatment at a recommended facility. The court also ordered that she return to jail after completing the program. Defendant was admitted to the residential facility on November 5, 2015. On November 30, defense counsel informed the court that defendant was scheduled to be discharged from the program and asked the court to modify her bond so that she could complete substance abuse treatment in an outpatient setting. The circuit court modified the amount of defendant's deposit bond with the conditions that she be placed on electronic home confinement and participate in outpatient treatment. On December 7, 2015, defendant completed the residential program and was transported back to jail.

¶ 5     As defendant was unable to pay the new deposit bond, defense counsel asked the circuit court to reduce it again so that she could participate in outpatient treatment. The court did so, with the same conditions. The court's order specified that she was only allowed to leave her home for treatment and court appearances. On December 22, 2015, defendant paid the deposit to be released on bond and was placed on electronic home confinement so that she could attend outpatient substance abuse and mental health treatment. While on electronic home confinement, defendant participated in various substance abuse and mental health programs. On May 9, 2016, she filed a motion to modify the bond, asking the court to remove the conditions of electronic home

2

confinement and pretrial services so that she could go live with her mother. The court granted the motion and removed both conditions on May 16, 2016.

¶ 6    In May 2022, defendant entered an open plea of guilty to a reduced charge of involuntary manslaughter. The circuit court held a sentencing hearing on November 4, 2022. Defendant was sentenced to nine years in IDOC, to be served at 50%. The court awarded her 269 days of credit toward her prison term for time served in jail and on electronic home confinement. These credits consisted of 124 days for time spent in jail from August 21, 2015, to December 22, 2015, and 145 days spent on electronic monitoring, GPS monitoring, or home confinement from December 23, 2015, to May 16, 2016.

¶ 7    After sentencing, defendant filed a *pro se* motion pursuant to Illinois Supreme Court Rule 472 (eff. Feb. 1, 2024) asking the court to correct the mittimus to include an additional 279 days of credit for her time spent in substance abuse treatment and pretrial services programs between November 2015 and May 2016 while on electronic home confinement. She further contended that she was in custody while in home detention during the time she attended the programs. The circuit court denied her motion in a docket entry order dated March 25, 2024. The order stated, in part:

> "No authority has been provided to the Court supporting Defendant's contention that, because she is eligible for day-for-day good time credit while in prison, she is entitled to that credit for the number of days served in jail awaiting trial. [I]t is clear that the defendant was entitled to receive credit for the days that [s]he served in jail awaiting trial, pursuant to 730 ILCS 5/5-4.5-100(b). Defendant cites to the County Jail Good Behavior Allowance Credit Act, 730 ILCS 130/3, in her motion. Although she would have been eligible for good-time credit for serving a jail sentence, she was not under a sentence while in pretrial custody."

¶ 8    On April 8, 2024, defendant filed a *pro se* motion to reconsider, arguing that she had inadvertently cited to the wrong subsection in her original motion, and that the authority for her position was found in section 5-4.5-100(c-5) of the Unified Code of Corrections (Code), which states, "The trial court shall give the defendant credit for successfully completing county

3

programming while in custody prior to imposition of sentence at the rate specified in Section 3-6-3 (730 ILCS 5/3-6-3). For the purposes of this subsection, 'custody' includes time spent in home detention." 730 ILCS 5/5-4.5-100(c-5) (West 2022).

¶ 9    The circuit court denied defendant's motion to reconsider, stating that her cited statutory authority was not applicable. The court found that she was not in custody while attending the treatment programs, which the court described as being offered to defendants upon pretrial release. This appeal follows.

¶ 10                                    II. ANALYSIS

¶ 11    On appeal, defendant argues that the circuit court erroneously concluded that she was not in "custody" pursuant to section 5-4.5-100(c-5) while participating in the substance abuse treatment programs for which she seeks additional sentencing credit. The State raises two arguments in response. Before turning to the matter of statutory interpretation, we address the State's contention that this appeal is moot because defendant is no longer in IDOC custody.

¶ 12                                    A. Mootness

¶ 13    An appeal is moot where the underlying issues "have ceased to exist because intervening events have made it impossible for the reviewing court to grant effectual relief to the complaining party." *People v. Roberson*, 212 Ill. 2d 430, 435 (2004); see also *People v. Henderson*, 2011 IL App (1st) 090923, ¶ 9 ("an issue may become moot where circumstances change while an appeal is pending and prevent the reviewing court from being able to render effectual relief"). The defendant in *Roberson* appealed from the denial of a posttrial motion arguing that he was entitled to additional sentencing credit. *Roberson*, 212 Ill. 2d at 433. In the interim, he finished serving his sentence and MSR. *Id.* at 435. Our supreme court determined that the appeal was moot because it could not render effectual relief where the defendant had completed his entire sentence. *Id.* at 435-

4

36 (choosing to address the merits under the public interest exception to the mootness doctrine); see also *People v. Funches*, 2019 IL App (3d) 160644, ¶ 8.

¶ 14     Here, defendant was released from IDOC on June 13, 2025, and is currently on parole.[1] According to IDOC's records, she is serving a one-year term of MSR. The State argues that defendant's argument on appeal concerns only her term of imprisonment, with no mention of her MSR period, and is therefore moot. We disagree.

¶ 15     While our courts have found appeals regarding requests for additional sentencing credit to be moot where defendants have finished serving their terms of imprisonment and MSR, the same does not hold true where a defendant remains on MSR. Our supreme court has found that a defendant's challenge to her sentence was not moot where she had been released from prison but was on MSR, because the length of her sentence "would affect how long she could be reincarcerated for a violation of the conditions of her release." *People v. Jackson*, 199 Ill. 2d 286, 294 (2002); see also *People v. Montalvo*, 2016 IL App (2d) 140905, ¶¶ 14-15 (explaining that although the defendant was released from prison, any additional sentence credit could reduce the length of his imprisonment were he to violate his MSR, and thus the appeal was not moot).

¶ 16     Furthermore, section 3-3-9 of the Code provides that the recommitment after a revocation of MSR "shall be for the total mandatory supervised release term, less the time elapsed between the release of the person and the commission of the violation for which mandatory supervised release is revoked." 730 ILCS 5/3-3-9(a)(3)(i)(B) (West 2022). If a defendant would have been released sooner, due to the application of additional sentence credits, this calculation would

---

[1]This court may take judicial notice of information on the IDOC website. See *People v. Peacock*, 2022 IL App (1st) 170308-B, ¶ 16 n.1.

necessarily be impacted. Thus, we find that defendant's appeal is not moot where she remains on MSR and we are able to render effectual relief in the form of affecting her possible recommitment.

¶ 17                    B. Whether Defendant Was Entitled to Additional Credit

¶ 18    Defendant now argues that the circuit court relied on the wrong subsection of section 5-4.5-100 of the Code when it denied her motion to correct the mittimus by citing to subsection (b) and further rejecting her argument, as clarified in her motion to reconsider, that subsection (c-5) applied to her request. *Id.* § 5-4.5-100(b), (c-5). She contends that the court erred in finding that subsection (c-5) was inapplicable because she was not in custody while attending outpatient treatment and other programs, as the subsection states that "custody" includes time spent in home detention.

¶ 19    The State argues in response that, despite being awarded some sentencing credit for this period, defendant was not entitled to receive *any* credit for the time she spent on home confinement as a condition of bond. The State further alleges that defendant did not meet the statutory definition of being in "custody" pursuant to subsection (c-5), as she was released from custody upon posting bond on December 22, 2015, and remained so while attending the outpatient treatment and programs. Therefore, the circuit court did not err in deciding not to award her any additional credit beyond the 145 days it had already granted her for the time since her release.

¶ 20    Section 5-4.5-100(b) of the Code provides, in relevant part, that

> "the offender shall be given credit *** for the number of days spent in custody as a result of the offense for which the sentence was imposed. *** The trial court shall give credit to the defendant for time spent in home detention on the same sentencing terms as incarceration as provided in Section 5-8A-3 (730 ILCS 5/5-8A-3). Home detention for purposes of credit includes restrictions on liberty such as curfews restricting movement for 12 hours or more per day and electronic monitoring that restricts travel or movement." *Id.* § 5-4.5-100(b).

6

Section 5-4.5-100(c-5) states that the court shall give a defendant credit "for successfully completing county programming while in custody prior to imposition of sentence at the rate specified in Section 3-6-3 (730 ILCS 5/3-6-3)." *Id.* § 5-4.5-100(c-5). The provision also explains that "[f]or the purposes of this subsection, 'custody' includes time spent in home detention." *Id.*

¶ 21    The nature of the programs defendant attended, as well as her successful completion of these programs, is not in question. Thus, the issue in this case is whether defendant was on "home detention," and thus in custody, for the purpose of receiving sentencing credit under section 5-4.5-100(c-5) of the Code. We review matters of statutory construction *de novo*. *People v. Donahue*, 2022 IL App (5th) 200274, ¶ 10.

¶ 22    In support of her position that she was in custody pursuant to subsection (c-5), which explicitly includes home detention in defining this term, defendant points to subsection (b), which defines "home detention" for the purposes of receiving sentencing credit, as "restrictions on liberty such as curfews restricting movement for 12 hours or more per day and electronic monitoring that restricts travel or movement." 730 ILCS 5/5-4.5-100(b) (West 2022). Defendant alleges that while she was on electronic confinement, she was only allowed to leave her home for substance abuse and mental health treatment, pursuant to the court's order as conditions of bond. Therefore, under the plain language of the statute, she was on electronic monitoring restricting her movement, and in custody as required under subsection (c-5). Defendant does not cite to any caselaw authority interpreting the meanings of "custody" or "home detention" under either relevant statutory subsection.

¶ 23    In *People v. Donahue*, the circuit court released the defendant on a bail bond and placed him on electronic home monitoring and required him to remain in his residence, apart from work and other approved reasons. *Donahue*, 2022 IL App (5th) 200274, ¶ 4. We held that the defendant

7

was not entitled to sentencing credit for his time while released on bond, because he was on "home supervision" under the bail provisions of section 110-10(b)(14) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-10(b)(14) (West 2020)) rather than "home detention" under section 5-4.5-100(b) of the Code (730 ILCS 5/5-4.5-100(b) (West 2020)). *Donahue*, 2022 IL App (5th) 200274, ¶¶ 10-24, 32. We further determined that "home supervision pursuant to a bail agreement is distinct from home detention under the [Electronic Monitoring and] Home Detention Law." *Id.* ¶ 28; see also *People v. Smith*, 2014 IL App (3d) 130548, ¶ 35 (holding that "home confinement pursuant to an appeal bond does not qualify as custody entitling one to credit against his sentence under the statute").

¶ 24      The Electronic Monitoring and Home Detention Law (730 ILCS 5/5-8A-1 *et seq.* (West 2022)), referenced in section 5-4.5-100(b) of the Code, defines home detention as "the confinement of a person convicted or charged with an offense to his or her place of residence under the terms and conditions established by the supervising authority." *Id.* § 5-8A-2(C). In differentiating the aforementioned "home supervision" from "home detention," we held that the legislature's use of the two separate terms in the bail statute and the home detention statute, respectively, suggested that they were not meant to be synonymous. *Donahue*, 2022 IL App (5th) 200274, ¶¶ 23-24. Specifically:

> "[T]he use of 'home supervision' in the bail provisions means that the legislature did not intend that any time an offender was released on bond with a condition that he remain at his residence (or residence and workplace), he would automatically be deemed to have been placed in a home detention program, thereby making him eligible for sentencing credit. Instead, if he were placed in a home detention program, the trial court would have to expressly state that the offender was being confined in a home detention program, and the requirements of that program would have to be followed for the offender to later qualify for sentencing credit." *Id.* ¶ 24.

¶ 25      We further explained that, even if we accepted that the two terms were equivalent, the defendant would not have been under "home detention" for the purposes of determining sentencing

8

credit because his home confinement was not overseen by an applicable supervising authority pursuant to the Electronic Monitoring and Home Detention Law. *Id.* ¶ 32; 730 ILCS 5/5-8A-2(C) (West 2022). His electronic home monitoring was supervised by the St. Clair County probation department, but it was the circuit court, not the probation department, that set the terms and conditions of his bond, including the condition of the aforementioned monitoring. *Donahue*, 2022 IL App (5th) 200274, ¶ 32. We therefore concluded, "Without being placed into a pretrial in-home electronic monitoring by a supervising authority, the defendant cannot maintain that he was on 'home detention' pursuant to the Home Detention Law. As a result, the defendant is not entitled to sentencing credit under section 5-4.5-100(b) of the Code of Corrections." *Id.*

¶ 26    Similarly, in *People v. Currey*, the defendant sought additional presentence custody credit for time spent "confined to his parent's home on electronic monitoring" before trial. 2024 IL App (2d) 230099, ¶ 21. The Second District explained that his argument conflated "home detention" under section 5-4.5-100(b) of the Code with "home supervision" under the pretrial release provisions in the Code of Criminal Procedure of 1963 (725 ILCS 5/110-10(b)(14) (West 2020)), where "[t]he former must be credited against a defendant's sentence, while the latter bond or pretrial custody period need not be." *Id.*

¶ 27    The *Currey* court found the defendant did not meet the definition of "home detention" when he was released on bail bond with restrictions. *Id.* ¶¶ 22-23. The court noted this determination was "consistent with prior decisions holding that pretrial conditions never automatically qualify as 'custody' or 'confinement' for home detention sentence credit." *Id.* ¶ 23 (collecting cases). In response to the defendant's argument that new amendments to relevant sections of the Code expanded the definition of home detention credit, the court explained:

> "In order to qualify for home *detention* credit, the offender must be confined to his or her place of residence 'under the terms and conditions established by the supervising

9

authority.' 730 ILCS 5/5-8A-2(C) (West 2020). Nothing in the statutory definition of a '[s]upervising authority' embraces the conclusion that a trial court, having issued an order for bond or pretrial release, qualifies as a supervising authority, or converts an offender's pretrial release on home supervision as home detention under the Unified Code of Corrections. See *id.* § 5-8A-2(E). Defendant relies on the fact that the new amendments added the 'a Chief Judge's office' to the list of entities that qualify as a supervising authority. *Id.* But we reject that argument, as pretrial offenders are under the supervision of the trial court judge handling the case and not a postjudgment program established by the chief judge of the county. See *id.* § 5-8A-9." (Emphasis in original.) *Id.* ¶ 22.

¶ 28 In the present matter, we find the factual circumstances to be comparable to those of *Donahue* and *Currey*. Defendant was released on bond with the condition, set by the circuit court, of electronic home monitoring. It was during this time that she completed the programs for which she now seeks additional pretrial sentencing credit. Defendant correctly notes that section 5-4.5-100(c-5) of the Code defines "custody" to include time spent in home detention. However, for the same reasons detailed in the above caselaw, we find that she was not on "home detention" under a "supervising authority" pursuant to the relevant statutory definitions. Therefore, the circuit court did not err in denying her request for additional credit.

¶ 29                                     III. CONCLUSION

¶ 30 For the reasons stated, the circuit court did not err in denying the defendant's motion to reconsider its denial of her motion to correct the mittimus. The judgment of the circuit court is affirmed.


¶ 31 Affirmed.